IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR LINN COUNTY

| | |
|---|---|
| GREEN CROSS DISPENSARY, LLC; GAYLE ASHFORD, AND RANDY SIMPSON<br><br>Plaintiffs<br><br>v.<br><br>CITY OF BROWNSVILLE, A MUNICIPAL CORPORATION OF OREGON; City of Brownsville Planning Commissioners Bryan Wyant, Mike McDaniel, Gary Compton, Josh Kometz and Rob; Scott McDowell, City Administrator; City Councilors Block, Shepherd, Chambers and Neddeau,<br><br>Defendants | CASE NO.:    19CV33720<br><br>SECOND AMENDED COMPLAINT<br><br>42 U.S.C. 1983 – FIRST AMENDMENT; VIOLATION OF THE FOURTEENTH AMENDMENT'S GUARANTEES OF EQUAL PROTECTION- CLASS OF ONE<br><br>PRAYER: $120,000 (ORS 21.160(1)(c); $560) NOT SUBJECT TO ARBITRATION DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.    This is a civil action for damages and attorney's fees, for unlawfully denying plaintiffs a conditional use permit required to obtain an OLCC License to operate a recreational cannabis dispensary. Despite the undisputed fact that Oregon state law *required* the City of Brownsville to grant the permit, both the Planning Commission, then the City Council, denied the application, openly stating that were individually against marijuana for a variety of reasons. This represent a violation of the equal protections of law (Fourteenth Amendment), under 42 U.S.C. 1983, as class of one.

2.    These individuals' outward dislike for marijuana along with the disdain and

1 -    AMENDED COMPLAINT

BRIAN MICHAELS, P.C.
Attorney At Law
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
Telephone: (541)687-0578

1   disparaging remarks about its presence in the community, despite the state legalizing the

2   recreational sale of marijuana, operated to deny these plaintiffs their First Amendment right

3   to discuss the commercial activity involved in the selling of recreational cannabis.

4                                        **PARTIES**

5

6        3.      At all relevant times, plaintiffs were and are residents of the state of Oregon;

7   Green Cross Dispensary, LLC as a registered Oregon Corporation, and Mr. Randy Simpson

8   and Ms. Gayle Ashford are Oregon residents, and controlling members of Green Cross

9   Dispensary, LLC.

10       4.      Defendant City of Brownsville (hereafter 'City') is a municipal corporation

11  charged with and responsible for all license approvals and legislation within the City,

12  including land use and City Planning. At all relevant times Defendant City had the power,

13  right and duty to control the manner in which the individual defendants in this lawsuit carried

14  out the objectives of their employment, and to see that all orders, rules, training, instructions

15  and regulations promulgated for the City were consistent with the State and Federal

16  Constitutions, Statutes, and the laws of the municipality.

17

18

19       5.   The City Council and Planning Commission were at all times a function of the

20  City. The individual defendants named in this lawsuit-- City of Brownsville Planning

21  Commissioners Wyant, McDaniel, Compton, Josh Kometz and Rob; Scott McDowell, City
    Administrator;

22

23  City Councilors Block, Shepherd, Chambers and Neddeau -- were at all material times

24  acting under color of state law and acting as an agent/employee of the Coty and within the

25  course and scope of their employment. They are sued in their individual capacity.

26       6.      The individual Defendants' acts which are the subject of this lawsuit were

2 -    AMENDED COMPLAINT

BRIAN MICHAELS, P.C.
Attorney At Law
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
Telephone: (541)687-0578

undertaken in the regular course of their employment for Defendant City.

## FACTUAL OVERVIEW

7.    In accordance with Oregon law, if the City of Brownsville wants to do prohibit recreational cannabis dispensaries within City limits, it must put the question to the voters at the next election. They put the question to the voters, and the prohibition was voted down. At that point, according to Oregon law, the City of Brownsville must allow recreational cannabis dispensaries within City limits.

8.    These claims arise out of the unlawful denial of a conditional use permit required by OLCC for Plaintiffs to apply for their license allowing them to open their recreational sales of cannabis dispensary, titled Green Cross Dispensary.  The denial came first from the Planning Commission, then, following a timely appeal, the denial was upheld by the city council. A LUBA Appeal was timely filed, resulting in the City Council reversing its decision.

9.    Plaintiff's application for conditional use permit application was deemed complete May 30th, 2017. Within 60 days after the Plaintiff's application for a conditional use was received, in accordance with BMC 15.125.030.C, July 17, 2017 the planning commission held a hearing. On July 31, 2017, the planning commission denied the application, and on August 1, 2017 it was registered. A copy of the July 31, 2017 transcript is attached hereto. This denial could start the two-year statute of limitations to run. The stronger argument is that time would begin after the city council upheld the denial (see, Paragraph 11, Infra). Because the City would not agree to that date, Plaintiffs file this action at this time to preserve all aspects of the timeliness of the claim.

3 -    AMENDED COMPLAINT

BRIAN MICHAELS, P.C.
Attorney At Law
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
Telephone: (541)687-0578

10. A timely appeal was filed to the Brownsville City Council. The city council heard the appeal, upholding the planning Commission's denial, September 26, 2017. These are the minutes of that meeting, relevant to Plaintiffs' appeal:

> McDowell stated that this is an issue that has certainly divided this community. This issue puts these Councilors, Staff, neighbors, and users at odds. He does not envy any of the people to his left that have to make these kinds of decisions. He applauds all who are here tonight. To articulate for the public record, this has never just been about marijuana. Some folks think that the U.S. Constitution is being ignored and the Federal law is being broken. There is a strong body that believes that nationally. In the State of Oregon, voters did approve Measure 91, legalizing marijuana, and some will argue that it is unconstitutional. It is split down the line in this room tonight. City Staff and City Councilors are charged with discharging certain responsibilities. The City Attorney is focused on not getting the City involved in a liability situation. Liability is precarious at best. If the Simpsons appeal to LUBA(Land Use Board of Appeals) some folks are saying that the City's argument will not stand and the City will probably lose. With that said, sometimes Councils have to make decisions that they don't want to make. Councilor Gerber stated that she will be voting in the same way as she did before. She believes the Simpsons have met the conditions and that they City did vote in favor of recreational and medical marijuana. However, she would definitely vote for a City ordinance limiting outdoor marijuana grows outdoors; the City should be able to legally control that. Mayor Don Ware said that he will be voting the same as well. An official vote was called for. *Voting to deny the approval were Councilor Shepherd, Block, Chambers, and Neddeau. Voting against the denial were Mayor Don Ware and Councilor Gerber. The denial motion passed, 4-2.*

4 -    AMENDED COMPLAINT

BRIAN MICHAELS, P.C.
Attorney At Law
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
Telephone: (541)687-0578

(Emphasis in original)

11. Following the City's reversal of the decision to uphold the Planning Commission's denial, a LUCS (Land Use Compatibility Statement), needed to complete the OLCC Application, was issued to Plaintiffs, and the application was submitted shortly thereafter.

12. Plaintiffs dis not fully obtain their OLCC license until July 2018—more than one-year after they submitted their application for conditional use permit in May 2017.

13.The record of sales from May 2017 to June 2018 are:

| May-17 | 17 |
|--------|------|
| Jun-17 | 144 |
| Jul-17 | 218 |
| Aug-17 | 184 |
| Sep-17 | 243 |
| Oct-17 | 189 |
| Nov-17 | 170 |
| Dec-17 | 128 |
|  | 1,293 |
|  |  |
| Jan-18 | 204 |
| Feb-18 | 112 |
| Mar-18 | 141 |
| Apr-18 | 192 |
| May-18 | 141 |
| Jun-18 | 100 |
|  | 890 |
|  |  |
|  | 2,183 |

14. In accordance with those experienced and expert in the field, long-time marijuana dispensary owner—both medical and then recreational -- the average recreational

5 -    AMENDED COMPLAINT

BRIAN MICHAELS, P.C.
Attorney At Law
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
Telephone: (541)687-0578

Notice of Removal
Defs' Ex. 2 (5 of 66)

1    sale is about $45. This sums up to 2,183 times (X) $45 = $98,235. This figure does

2    not/cannot include these customers' subsequent follow-up visits, which is currently occurring

3    now that the recreational dispensary is operational.

4

5        15. Separately, there were these out-of-pocket expenses attributable to the unlawful

6    denial:

7        Legal fees: $7,000

8        Transcript fees: $1,000

9        Licensing fees: $4,000 (they had to obtain another, unnecessary, medical license)

10

11                        **FIRST CLAIM FOR RELIEF**
12        **(Violation of Constitutional Right to Free Speech and Assembly)**
          **(42 U.S.C. § 1983, First Amendment to the U.S. Constitution)**
13                        **(Individual Defendants)**

14        16. The foregoing paragraphs are incorporated herein by reference.

15        17.    By their actions as described herein, the individual defendants, under color of
16
     statute, ordinance, regulation, custom, or usage, unlawfully denied Plaintiffs their right to the
17
18    license necessary to practice their trade, and engage in the type of speech and assembly

19    necessarily included in the practices of that trade, solely because they dislike and disfavor the

20    content of the trade, its speech and its assembly, through unbridled discretion, subjected

21    Plaintiffs to deprivation of their liberty interests, which constitutes rights, privileges, or
22
     immunities secured by the Constitution and laws.
23
24        18.    As a direct and proximate result of the deprivation of Plaintiffs' rights,

25    Plaintiffs sustained actual damages, including loss of liberty; mental and emotional suffering;

26    humiliation; shame; embarrassment; worry; fear; anguish; shock; nervousness; and anxiety;

6 -    AMENDED COMPLAINT

BRIAN MICHAELS, P.C.
Attorney At Law
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
Telephone: (541)687-0578

all to her damage in an amount to be ascertained according to proof at trial.

19.    As a direct and proximate result of the unlawful actions of Defendants in this claim, Plaintiffs sustained actual damages as detailed in Paragraphs 14 and 15 of this Complaint.

20.    The actions of the individual Defendants, as described in this First Claim For Relief, herein, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiffs. As a result of said intentional conduct, Plaintiffs will be seeking punitive damages against the individual Defendants in an amount sufficient to punish them and to deter others from like conduct.

21.    Plaintiffs were required to hire attorneys to represent them in this matter and is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

22.    Plaintiffs are entitled to a jury trial.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE FOURTEENTH AMENDMENT'S**
**GUARANTEES OF EQUAL PROTECTION**
**(42 U.S.C. § 1983)**
**(42 U.S.C. § 1983, Fourteenth Amendment to the U.S. Constitution**
**Class of One)**
**(Individual Defendants)**

23.    The foregoing paragraphs are incorporated herein by reference.

24.    By their actions as described herein, the individual defendants, under color of statute, ordinance, regulation, custom, or usage, subjected plaintiffs to the deprivation of rights, privileges, or immunities secured by the Fourteenth Amendment of United States

BRIAN MICHAELS, P.C.
Attorney At Law
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
Telephone: (541)687-0578

Constitution and laws, by unlawfully denying Plaintiffs their right to the license necessary to practice their trade, solely due to their animus toward the content of plaintiffs' class status—a lawful recreational cannabis dispensary. Thereby singling out these Plaintiffs as a class of one. The Equal Protection Clause ensures that all persons similarly situated should be treated alike. Similarly situated in this instance means all persons applying for a conditional use permit. The equal protection guarantee protects not only groups, but individuals who would constitute a "class of one." Where, as here, state action does not implicate a fundamental right or a suspect classification, the plaintiff can establish a "class of one" equal protection claim by demonstrating that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Plaintiffs in this instance, unlike most if not all others, were in the unique position of having a mandate from Oregon statutes to have their conditional use permit be granted by Defendants.

25. As a direct result of this unequal treatment under the laws by defendants, Plaintiffs were subjected to deprivation of their liberty interests, which constitutes rights, privileges, or immunities secured by the Constitution and laws.

26. As a direct and proximate result of the deprivation of Plaintiffs' rights, Plaintiffs sustained actual damages, including loss of liberty; mental and emotional suffering; humiliation; shame; embarrassment; worry; fear; anguish; shock; nervousness; and anxiety; all to her damage in an amount to be ascertained according to proof at trial.

27. As a direct and proximate result of the unlawful actions of Defendants in this claim, Plaintiffs sustained actual damages as detailed in Paragraphs 14 and 15 of this Complaint.

8 -    AMENDED COMPLAINT

BRIAN MICHAELS, P.C.
Attorney At Law
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
Telephone: (541)687-0578

Notice of Removal
Defs' Ex. 2 (8 of 66)

28.    The actions of the individual Defendants, as described in this First Claim For Relief, herein, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon Plaintiffs. As a result of said intentional conduct, Plaintiffs will be seeking punitive damages against the individual Defendants in an amount sufficient to punish them and to deter others from like conduct.

29.    Plaintiffs were required to hire attorneys to represent her in this matter and is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

30.    Plaintiffs are entitled to a jury trial.

**FOURTH CLAIM FOR RELIEF**
**(Municipal Liability Claim - 42 U.S.C. § 1983;**
**Monell v. Dept. of Social Services and Adickes v. Kress)**
**(Marijuana Bias)**
**(Defendant CITY OF BROWNSVILLE)**

31.    The foregoing paragraphs are incorporated herein by reference.

32.    Defendant City has failed to properly train and guide the individual defendants, in their city positions, as either elected officials or hired officials, on how to guarantee the city's residents their constitutional and statutory rights. In this case lawful cannabis dispensary was the sole factor in making these decisions.

33. Defendant City is directly liable to plaintiffs for its unconstitutional policies, customs, or practices; and/or for failing to properly train its decision makers, elected and hired.

34. As a direct and proximate result of the actions and omissions described in this complaint, plaintiffs incurred damages alleged herein, and were required to hire an attorney

9 -    AMENDED COMPLAINT

BRIAN MICHAELS, P.C.
Attorney At Law
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon 97401
Telephone: (541)687-0578

1   to represent them and is entitled to an award of reasonable attorneys' fees and costs pursuant

2   to 42 U.S.C. § 1988.

3       35. Plaintiffs are entitled to a jury trial.

4                          **PRAYER FOR RELIEF**

5       WHEREFORE, plaintiffs request a jury trial and demand judgment in their favor and

6   against defendants for the relief sought herein; future request for punitive damages, for their

7   reasonable costs and attorney fees; and for any other relief deemed appropriate by the court.

8

9

10      Respectfully submitted September 17, 2019,

11

12              s/BRIAN MICHAELS
                BRIAN MICHAELS, OSB 925607

13

14  BRIAN MICHAELS, OSB # 925607
    259 East Fifth Avenue, Suite 300-D
15  Eugene, Oregon 97401
    541-687-0578
16  Fax 541-686-2137
17  brian@brianmichaelslaw.com

18  MARIANNE DUGAN, OSB # 932563
    259 E. 5th Avenue, Suite 200-D
19  Eugene, OR 97401
    541-338-7072
20  Fax no. 866-650-5213
21  mdugan@mdugan.com

22      Attorneys for Plaintiffs

23

24

25

26

10 -    AMENDED COMPLAINT
                        BRIAN MICHAELS, P.C.
                         Attorney At Law
                    259 East Fifth Avenue, Suite 300-D
                        Eugene, Oregon 97401
                      Telephone: (541)687-0578

*City of Brownsville Planning Commission Meeting*

*Land Use Planning Meeting*

*Transcribed from CD- Simpson*

*July 31st, 2017*



CC REPORTING AND VIDEOCONFERENCING
172 East 8th Ave
Eugene, OR 97401
541-485-0111
www.ccreporting.com

Notice of Removal
Defs' Ex. 2 (11 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

1

CITY OF BROWNSVILLE PLANNING COMMISSION MEETING

JULY 31, 2017

Notice of Removal
Defs' Ex. 2 (12 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

2

1              COMMISSIONER:  We'll go ahead and

2    reconvene this meeting from -- what date was it last

3    time?

4              COMMISSIONER:  July 17th.

5              COMMISSIONER:  July 17th.  So what I

6    think we'll do is we'll do roll call, do the pledge

7    of allegiance, and then I'll turn it over to Scott

8    to kind of summarize things for us, and then we'll

9    get back into this conditional permit request.

10              ELIZABETH COLEMAN:  Commissioner

11    Wyant.

12              COMMISSIONER:  Here.

13              ELIZABETH COLEMAN:  Commissioner

14    MacDaniel?

15              COMMISSIONER:  Here.

16              ELIZABETH COLEMAN:  Commissioner

17    Thompson?

18              COMMISSIONER:  Here.

19              ELIZABETH COLEMAN:  Commissioner

20    Andrews?

21              COMMISSIONER:  Here.

22              ELIZABETH COLEMAN:  Commissioner

23    Compton?

24              COMMISSIONER:  Here.

25              ELIZABETH COLEMAN:  Commissioner

Notice of Removal
Defs' Ex. 2 (13 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

3

1    Wendgren?

2                    COMMISSIONER:  Here.

3                    ELIZABETH COLEMAN:  Commissioner

4    Kometz?

5                    COMMISSIONER:  Present.

6                    ELIZABETH COLEMAN:  And Scott McDowell

7    and myself are here.  Scott is passing --

8                    COMMISSIONER:  We'll do the pledge

9    first.

10                    ELIZABETH COLEMAN:  Sorry.  You're

11    right.  I'm ahead of the game.

12                    (Crosstalk.)

13                    (Pledge of Allegiance.)

14                    SCOTT:  So welcome to part two of the

15    Simpsons' application clarification.  I want to talk

16    about what we learned as a result of Mr. MacDaniel's

17    question and then some procedural things, too, that

18    I wanted to address with the planning commission.

19                    So at the last meeting to consider

20    Simpsons' request for a recreational conditional use

21    application, the planning commission had a

22    relatively robust discussion over some of the pros

23    and cons, how that fit in the plan.  There was some

24    discussion regarding a variety of issues from

25    federal law to the American Medical Journal

Notice of Removal
Defs' Ex. 2 (14 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

4

1    articles.

2              Bottom line at the end of the day was

3    Mr. Mike MacDaniel was responding to a question, as

4    was Mr. Brian Wyant, about the part of the municipal

5    code that deals with playgrounds and the thousand

6    foot rule.

7              Commissioner Compton -- or Chair

8    Compton attempted to address that question but the

9    question remained unanswered.  I had attempted to

10   get ahold of the attorney prior to the meeting, the

11   city attorney.  He was on vacation so I wasn't able

12   to clarify that rule.

13             So basically what the committee did

14   was they had made it through the public portion of

15   the meeting.  They went into the discussion portion

16   of the meeting, which was for the commission only.

17   Upon that question being asked, a summary vote was

18   taken to see what it turned out to be.  Turned out

19   to be a 3-3 tie.

20             However, since Mr. MacDaniel had made

21   the motion, and Mr. Wyant, for us to go forth and

22   you guys agreed to go forth for more information,

23   that's why the meeting was tabled so that we could

24   reconvene this evening.

25             Upon that, (inaudible) some of the

Notice of Removal
Defs' Ex. 2 (15 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

5

1   information, Mr. Rob Wendgren was not in attendance

2   at the last meeting.  He is in attendance at this

3   meeting.  However, did -- Mr. Rob, were you able to

4   come in before five o'clock today and listen to the

5   audio recording of the last meeting?

6                    COMMISSIONER:  No.

7                    SCOTT:  Okay.  So Mr. Wendgren will

8   not be able to participate.  So the rule is this:  I

9   mean, he can -- he can sit here and have a seat, but

10  the rule is, is if you're going to be a voting

11  member on an issue that was heard at a reconvening,

12  you have to come in and listen to the full audio.

13  So that's why Elizabeth was saying, you know, five

14  o'clock the day of the meeting you would need to do

15  that.  So that's one procedural step.

16                   Second procedural step is it is up to

17  the planning commission chair, of course, if you

18  want to reopen any public portion of the meeting.

19  Otherwise, we would just get down to business.

20                   So -- so getting back down to the

21  question from the attorney, I talked to Ross

22  Williamson at Speer Hoyt.  I brought up the

23  question.  Chapter 15.111 marijuana uses.  As we

24  were in that chapter, under zoning and conditions of

25  approval which we're talking about, paragraph B1(c)

Notice of Removal
Defs' Ex. 2 (16 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

6

1   says within 1,000 feet of a public park, playground,

2   recreational facility, or athletic field.

3                    However, in paragraph C, it clarifies

4   what that means.  In paragraph C3 it indicates a

5   public park, playground, recreational facility, or

6   athletic field, means a park, playground,

7   recreational facility, or athletic field that is

8   owned or operated by a government entity or a

9   nonprofit organization and that is open to the

10  general public excluding mini parks or pocket parks

11  as defined in the City's master park plan.

12                    So the reason why the City attorney

13  and, of course, they were doing this in real-time

14  when we were going through the land use with no

15  precedents or anything, right, they were taking a

16  look at how do we keep our clients out of litigation

17  on marijuana issues.

18                    They ruled that -- not just in our

19  case but in many cases that they dealt with in their

20  clients -- that the City's -- the City's park master

21  plan, as approved and adopted by the Council, is a

22  stand alone document, so it is a stand alone

23  document that has bearing, so those are the

24  definitions that were used.

25                    In the City's park master plan,

Notice of Removal
Defs' Ex. 2 (17 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

7

1   Blakely Park is considered a pocket park.  Even

2   though there's a playground there, right, even

3   though it's within 1,000 feet or roughly 640 feet,

4   plus or minus, its still, by definition, qualifies

5   as an eligible place to locate a marijuana business.

6                  And for the sake of this argument --

7   for the sake of conditional uses that we were able

8   to do at the time, marijuana uses include medical

9   and recreational.

10                  So to answer your question, Mike, it

11  does meet the code under those series of

12  definitions.

13                  I asked the rationale for the

14  attorney.  He said basically what we were trying to

15  do at that time, and he said, "I still stand behind

16  it today."  He said, you never want -- you're not

17  allowed by the revised statute to zone a use out --

18  you can't zone a use out.  And so, in effect, if we

19  would have done time place and manner, and we would

20  have zoned not just the Simpsons but anyone wanting

21  to do marijuana, out of our community, then they

22  would have a legal grounds to actually come against

23  the City with a lawsuit.

24                  So, you know, of course their number

25  one priority is to avoid that, and so that's why

Notice of Removal
Defs' Ex. 2 (18 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

8

1   that came down that way.  So hopefully that provides

2   enough clarity on that issue.  I know that it's --

3   you know, it's a bit of a semantics issue because it

4   is a playground, and I totally see your point,

5   Commissioner Wyant.  So that's what I've got,

6   though, in terms of answering that specific

7   question.

8               Is there anything else you wanted me

9   to do?  Oh, I will, though.  I will, though.  So in

10  matter of procedure.  So basically what Chair

11  Compton will do moments from now is he will reopen

12  the discussion between the commissioners and the

13  commissioners will be able to vote, save Mr. Rob, on

14  the topic.

15              Basically what would happen at that

16  point, if the vote ends this time in 3-3 tie, a 3-3

17  vote is a denial.  What happens at that point is the

18  applicant, Mr. and Mrs. Simpson -- Ashford and

19  Simpson -- would be able to appeal that decision to

20  the City Council.

21              Basically how that works procedurally

22  is within 15 days of the notice of decision, which I

23  think there's a timeline we have there, we've got

24  five days to get the notice and decision out, they

25  would have 15 days upon receipt of that notice of

Notice of Removal
Defs' Ex. 2 (19 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

9

1   decision to let us know if they would like to appeal

2   that decision to the City Council.  And then the

3   City Council would hear the exact same presentation

4   and make a determination at that meeting.

5                    So that's procedurally what would

6   happen if it ends in a tie.

7                    So with that, Chair Compton, I will

8   throw it back to you unless there are any other

9   questions.

10                   COMMISSIONER:  Okay.  Thank you,

11  Scott.

12                   SCOTT:  Sure.

13                   COMMISSIONER:  And right now, unless

14  other people have a need to reopen the public

15  portion --

16                   UNIDENTIFIED FEMALE SPEAKER:  I have a

17  question to ask the Simpsons.

18                   COMMISSIONER:  We'll right now that

19  portion is closed.  What would the question be

20  around?

21                   UNIDENTIFIED FEMALE SPEAKER:  But

22  you'd have the ability to reopen it.

23                   COMMISSIONER:  Yeah, but I think we

24  can discuss what it is.

25                   UNIDENTIFIED FEMALE SPEAKER:  I wanted

Notice of Removal
Defs' Ex. 2 (20 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

10

1    clarification (inaudible) a better understanding --

2    a better remembrance for me --

3                    COMMISSIONER:  Okay.

4                    UNIDENTIFIED FEMALE SPEAKER:  -- of

5    what the OLCC planning (inaudible) a year from now.

6    Because that will be (inaudible) they alluded to

7    that, that there were changes coming, and they had

8    to be in place she thought, by July of 2018, that

9    it's going to be mandated.

10                   That's my remembrance but I need to be

11   clear on that, because that could affect my view of

12   this.

13                   COMMISSIONER:  Yeah.  Well -- and that

14   was something I was going to discuss as well, so

15   maybe what we'll do is -- I'll share kind of where

16   I'm at, you share what your ideas or concerns are,

17   and then after we discuss it, and -- then maybe the

18   commission will have some pointed questions to ask

19   them.

20                   UNIDENTIFIED FEMALE SPEAKER:  Yeah, I

21   just don't want to be wrong and rely on my memory

22   and have it be incorrect.

23                   COMMISSIONER:  Well, the other thing

24   that I think that (inaudible) I have is -- I mean,

25   I'm sure they are doing their best to report to us

Notice of Removal
Defs' Ex. 2 (21 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

11

1    their understanding of changes but (inaudible) their

2    description of what their understanding is as fact.

3                    UNIDENTIFIED FEMALE SPEAKER:  My

4    understanding (inaudible) --

5                    COMMISSIONER:  Yeah.

6                    UNIDENTIFIED FEMALE SPEAKER:  Which --

7    from the OLCC, which would be pretty --

8                    ELIZABETH COLEMAN:  And you can ask

9    questions of the applicant at this time.  Just so

10   that you know, you can ask questions.  It's part --

11   it's still part of the process.

12                   COMMISSIONER:  But it's not if it's

13   closed.

14                   ELIZABETH COLEMAN:  Well, you can

15   reopen that portion of it.

16                   COMMISSIONER:  Oh, yeah, yeah.  But

17   the question is on the OLCC information.  Do you

18   guys have access to that or have you read it?  I

19   mean, the Simpsons, last time, were talking about

20   the changes coming with what they were told.  Did

21   that match your understanding or was that new

22   information to you?  I just don't want to take that

23   as fact.

24                   MS. ASHFORD:  That was somewhat new

25   information, and I actually have a call into the

Notice of Removal
Defs' Ex. 2 (22 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

12

1    OLCC on some clarifying piece for that, which is-

2                    COMMISSIONER:  I guess I'm just real

3    hesitant to take their interpretation of a confusing

4    situation up there as fact for us to use as a basis

5    of fact for our finding and discussion.

6                    UNIDENTIFIED MALE SPEAKER:  Well, I

7    think that OLCC probably has every intention of

8    doing that but we don't know really, honestly --

9    again, this whole situation has been so fluid and

10   ever changing.  You know, I'm sure that OLCC intends

11   to do those things, but whether or not they will be

12   able to and who knows what will happen in terms

13   of -- there's a lot of folks who are upset about

14   certain applications.  Who knows what's going to

15   happen at the next legislative session and so forth.

16                   COMMISSIONER:  So -- yeah.  So I think

17   that reminds me.  It seems like last time we just

18   decided, well, we just need to kind of base it on

19   what the law is today.

20                   UNIDENTIFIED FEMALE SPEAKER:  And that

21   could be reopened in a year or whenever that change

22   is.

23                   COMMISSIONER:  Yeah, yeah.  Let's talk

24   about it some more and then we'll see where we're at

25   after the discussion.  There may be other questions

Notice of Removal
Defs' Ex. 2 (23 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

13

1   and then we can open it.  Does that make sense?

2             ELIZABETH COLEMAN:  Yeah.  Sure.

3             COMMISSIONER:  Well, I will go ahead

4   and just -- I want to hear from everyone what their

5   position is or if they've had additional thoughts or

6   any ideas for further discussion.

7             What Trish is bringing up that I also

8   want to disclose, I guess, probably -- I think it

9   does fall under ex parte communication or

10  (inaudible) -- I'm not sure.  But actually, there is

11  a -- when I got home, I called up Don and asked him

12  if he had some time to read this first paragraph and

13  see if he kind of came up with any new

14  interpretations of that paragraph other than what I

15  had presented in the meeting.

16            And then Brian and I had a brief

17  conversation.  He was just -- being a new

18  commissioner, he was just asking me if he thought --

19  was asking me if his position on the parks was out

20  of line for his role as a commissioner, and I told

21  him I did not think so, that I supported his opinion

22  and that he was attempting to interpret the

23  ordinances and the rules and make a decision based

24  on -- you know, making a decision based on that, and

25  that was the decision he had made.  So I told him I

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

14

```
 1    thought he was within the bounds of his role.
 2              And then Trish emailed me and asked
 3    me, Gary, if we were to have a conditional use where
 4    edibles were not part of the business, is that
 5    something you would consider?
 6              And I wrote back that that's also
 7    something I thought of and it would be something I
 8    would consider but would have to look at the
 9    research again about how much of an impact that has.
10              TRISH:  And I think I said would it
11    change your view.
12              COMMISSIONER:  Yeah.
13              TRISH:  I didn't ask you to change
14    your decision.
15              COMMISSIONER:  No.
16              TRISH:  I said would it change your
17    view.
18              COMMISSIONER:  Right.  And I said
19    possibly based on -- after I have reviewed the
20    research.  So -- and then I got an email from
21    Scott -- not to leave Scott out.
22              SCOTT:  Right.
23              COMMISSIONER:  Informing us to be --
24    up dating us on some of the rules but also stating
25    that it's important, with an issue like this, not to
```

Notice of Removal
Defs' Ex. 2 (25 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

15

1    -- we've got to be careful about talking about it in

2    public and talking to friends and family and

3    communicating at length with even other

4    commissioners so . . .

5                    SCOTT:  Yeah.  And I do want to say

6    thank you to the commissioners.  I thought that,

7    given the circumstances, you handled the situation

8    as best you could.  A very difficult situation.

9    Obviously been a point of conversation in our

10   community for a number of years at this point.  But

11   yes, you've got to be careful of ex parte contacts.

12                    Anytime a meeting is -- is tabled as

13   such, especially when it's a quasijudicial hearing

14   like the planning commission, staff are really the

15   only people that are safe to talk to in terms of ex

16   parte contact.  So since you've listed the ones,

17   you're doing a great job there.

18                    So it's just a good learning curve for

19   future situations when you're tabled.  I mean, even

20   if we were -- I know we're going to have one that's

21   possibly contentious coming up, so that's just --

22   it's a point of order to remember for future.

23                    COMMISSIONER:  And then just to -- to

24   continue the conversation that Trish brought up

25   tonight was that -- I guess I am open to considering

Notice of Removal
Defs' Ex. 2 (26 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

16

1   approving the request with the condition that

2   edibles not be sold, and that's based on the

3   research that showed that 52 percent of the

4   hospitalizations -- I know Rob hasn't read this, but

5   the research was talking about increase in calls to

6   poison control and to the hospital when Colorado

7   moved from medical to recreational.

8                   So the edible products seemed to be

9   responsible for 52 percent of the exposures, so to

10  me, that's pretty significant.  And kind of going

11  back to this paragraph that, you know, I was quoting

12  up here, you know, it's weighing out the -- any of

13  the concerns or harm against the benefits, the

14  desirability of it.

15                  So I am open to doing that, and I want

16  to hear where everybody else is at with the park

17  issue and federal concerns.  (Inaudible).

18                  COMMISSIONER:  Well, to me, the park

19  was never an issue because I thought it was a pocket

20  park from the beginning, and so I wasn't concerned

21  about that.  The thing I keep going back to is all

22  these years we've been told and we have been trying

23  to use four criteria in determining whether or not

24  there should be a conditional use.  These are the

25  things we're supposed to use.  We're not supposed to

Notice of Removal
Defs' Ex. 2 (27 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

17

1    use our personal feelings, outside evidence,

2    discussions from the community, how the people voted

3    or anything.  We're supposed to use these four

4    criteria period.

5                   And I think in order for me to be

6    consistent, regardless of whether it's marijuana,

7    alcohol, guns, or whatever, I still have to use the

8    same four criteria regardless of my personal

9    feelings about it because we have to be consistent

10   and treat everybody the same.

11                  So I read these four criteria

12   consistent with the applicable policies of the

13   comprehensive plan, and then they list A through N

14   on that -- this is on page 6 of the staff report.

15                  So the first criteria we have to be

16   concerned about is is it consistent with the

17   applicable policies in the comprehensive plan, and

18   they list all of those.  The only one I can see

19   where there's even any question whatsoever is B.

20   That's the one that talks about adversely impacting,

21   which is your situation.  All the rest of them have

22   to do with plumbing, water, everything else, which

23   fits.

24                  So going through this so far, the only

25   thing I had is this adversely impact the surrounding

Notice of Removal
Defs' Ex. 2 (28 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

18

1    uses.

2              You look at the second criteria, it

3    doesn't -- I mean, we don't have to worry about the

4    location, size, the design, and operating

5    characteristics of the proposal.  We don't have to

6    worry about the location, the size, design,

7    operating characteristics.  That's not a concern.

8    So it fits that.

9              We look at the third criteria,

10   preserve those historical, archeological, natural,

11   and scenic assets.  We're not concerned with that,

12   so that's a yes.

13             Then the fourth one -- where did it

14   go?  Does not place an excessive burden on streets,

15   sewage, water supply, (inaudible) system, et cetera,

16   so we're not concerned with that.

17             So the only thing that I can see that

18   we're even concerned about is B, whether or not it

19   meets the -- that meets B of the first criteria.

20   Will the proposed development adversely impact the

21   surrounding areas?  And that seems to be, as far as

22   I'm concerned anyway, the only issue that we need to

23   worry about.

24             And I can't see that it's going to

25   adversely impact the surrounding uses.  It's that

Notice of Removal
Defs' Ex. 2 (29 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

19

1   simple.  So my conclusion is the same as staff

2   (inaudible) when they recommend this, so that's the

3   way I looked at it.  It's very complicated, so I had

4   to try to simplify it in my own mind using the

5   paperwork from the City to figure out what to do,

6   and that's what I came up with.

7                We got 10 or 12 pages of paperwork

8   here, and it's all very good, it's all very good

9   with the background.  But when you sift the wheat

10  from the chaff, we have this one straw:  Will

11  proposed development adversely impact the

12  surrounding uses?

13               That seems to be the question.  If the

14  answer to that is yes, then we should vote against

15  it.  If the answer to that is no, then we should

16  vote for it.  That's the way I see it.

17               COMMISSIONER:  Yeah.  I hear what

18  you're saying, and I guess -- and I know you like a

19  good discussion (inaudible).

20               I think one of the things that we --

21  conclusion we also came to last time is that staff

22  or Liz or maybe her predecessor came up with this

23  format, but what I did is I went to the City

24  ordinances that list what we're supposed to be

25  doing.  And I know this is throwing a monkey wrench

Notice of Removal
Defs' Ex. 2 (30 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

20

1   into what we've done for the last 12 years I've been

2   here -- but I sat down and read this word for word,

3   and it states in here that in addition to those four

4   things, before we do the four things, which is

5   (inaudible) "In judging whether or not a conditional

6   use proposal shall be approved or denied, the

7   planning commission shall weigh the appropriateness

8   and desirability for the public convenience or

9   necessity to be served against any adverse

10  conditions that would result from authorizing the

11  particular development at that location and those

12  four things listed below."

13            So anyway, that is not in staff's

14  report.  Since I've been here, that has not been

15  listed as something that we have addressed.

16            I discovered that, and then that's

17  kind of what I'm basing -- in part, basing my

18  position on.  So I know I'm throwing a monkey wrench

19  into things, because I do see, from the research

20  I've read, that recreational marijuana can cause a

21  significant increase in accidental -- unintentional

22  poisonings to young children.  So anyway --

23            COMMISSIONER:  You know, I agree with

24  you, that's kind of a monkey wrench because that

25  standard has never been enforced before that I'm

Notice of Removal
Defs' Ex. 2 (31 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

21

```
 1   aware of.

 2                  COMMISSIONER:  Right.

 3                  COMMISSIONER:  And -- but I would --

 4   over the last however many years -- we've been

 5   applying these other four standards.  In all

 6   fairness to these folks, I think we need to use the

 7   same standards on them that we've used on everybody

 8   else for the past 20 years.  And somehow, then, once

 9   we get through this proceeding, we need to figure

10   out how to shoehorn all this in through the Council

11   or whatever as to what's going to happen in the

12   future.

13                  But I don't think we should throw it

14   in now in this proceeding when it's never been

15   thrown in before.  That's what I'm objecting to, not

16   necessarily your interpretation of it, but the

17   process of using it now when we have never used it

18   before.

19                  SCOTT:  Okay.  There's a couple things

20   here I need to jump in for clarification purposes.

21   It has always been there.  It's just never been a

22   criteria that you guys have used.

23                  COMMISSIONER:  Are we supposed to use

24   it?

25                  SCOTT:  You can use whatever you want
```

Notice of Removal
Defs' Ex. 2 (32 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

22

1    based on the facts.  So talking to the attorney

2    about this particular issue -- because when I talked

3    with the attorney, I wanted to talk about several

4    things -- of course you can use that criteria should

5    you choose.  The strength of the argument is

6    where -- it's questionable.

7                One of the things that he pointed out

8    was, very simply, adverse -- adverse conditions.

9    How do you prove adverse conditions and what are you

10   going to cite for those adverse conditions?  And --

11   and it's a scale situation.

12               COMMISSIONER:  It's very subjective.

13               SCOTT:  Well, it is.  So the scale is

14   in each of your minds and your scale is do you feel

15   that it's going to -- the benefit is going to out

16   weigh the potential adverse conditions, or do you

17   feel that the adverse conditions outweigh the

18   potential benefits of whatever use it is?

19               So I know that doesn't clarify it

20   much, but -- but what I'm saying is, is that is also

21   part of the crux or criteria that anyone on any

22   planning commission can use to make their point or

23   validate their argument.  So good discussion,

24   though.

25               COMMISSIONER:  I think just take the

Notice of Removal
Defs' Ex. 2 (33 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

23

```
 1    monkey wrench out (inaudible) that just causes
 2    problems.  But we historically have been very
 3    careful about precedent in trying to be fair to all
 4    the applicants.  So maybe I can approach this in a
 5    different way and that is -- like when we were
 6    looking at the coffee roaster -- I brought this up
 7    last time -- is we spent a lot of time being very
 8    concerned about the smell of the roasting coffee
 9    impacting neighbors or surrounding uses, and we've
10    done so with the dog grooming and the dog housing,
11    whether it's going to be parking or quite possibly a
12    child sticks their hand through the fence
13    (inaudible), you know, concern how it impacts the
14    neighbors.
15                  I guess I'm just saying that if they
16    are selling the research and that where it comes
17    down to what the attorney said about having some
18    type of empirical standards, that's what I brought,
19    and it shows that if you have recreational
20    marijuana, the children that live in surrounding
21    areas, the increase of poison control calls goes up
22    five times and hospital is twice in Colorado, the
23    only known area that has this.
24                  So anyway -- so if we just look at
25    precedent, I'm looking at the impact this is going
```

Notice of Removal
Defs' Ex. 2 (34 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

24

1    to have on those people that are living in the other

2    areas, just like the coffee smell and the dog smell,

3    so maybe take it from that approach and weigh it

4    that way.  You still may not weigh out, but I'll

5    take this first part out of this.

6            SCOTT:  And when Liz and I considered

7    the staff report with Dave Kinney, that's the whole

8    purpose of a conditional use.  The whole purpose of

9    a conditional use is to look at the angles and to

10   allay those concerns.  Like, as an example, just to

11   clarify -- I know we've got folks in the audience

12   that don't understand -- I'm just going to dig a

13   little deeper.  I'm just going to just use one of

14   your examples on the dog kennel.

15           So we had a dog kennel/dog grooming

16   business, a couple of them, that had opened up in

17   town, and basically what the planning commission did

18   is said -- they said, Hey, look, we're going to

19   allow this conditional use for the period of one

20   year.  At the end of one year, we're going to take a

21   look at the complaints in the area, what was the

22   impact on the neighbors, did the dogs bark?  Were

23   they distracting?  Did they disturb the peace?  What

24   were the impacts to the community?

25           And that's why staff was suggesting

Notice of Removal
Defs' Ex. 2 (35 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

25

1    those types of pieces are absolutely legitimate to

2    consider during a conditional use.

3                    COMMISSIONER:  And that's why Trish

4    and I -- what we're talking about is that given that

5    edibles are not sold, that could dramatically

6    increase the negative impact on the environment and

7    that's, I assume, a condition we can put on it, so

8    I'm just open to that.

9                    COMMISSIONER:  Well, our concern with

10   the dogs and the coffee was -- we said if it bothers

11   anybody -- we're going to give you the use on both

12   of them, and if it bothers anybody, we're going to

13   come back and take a look at it.  That's not what

14   we're doing here.

15                   SCOTT:  Well, it could be.  You're not

16   to that point yet, Commissioner Andrews.

17                   COMMISSIONER:  What Gary is saying is

18   I don't want to give them the use because there's

19   evidence from other states that says that will

20   happen.  That's the difference.

21                   SCOTT:  Okay.  Well, I think you need

22   to get a vote to where you got to the part where

23   your putting conditions on there.  So continue your

24   discussion.  We don't want to get to the cart before

25   the horse.

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

26

1             UNIDENTIFIED FEMALE SPEAKER:  My view

2     would be -- as a suggestion -- as a suggestion --

3     that we grant conditional use that they be allowed

4     to sell the recreational marijuana with the

5     exception of edibles.  And the conditional use is no

6     edibles.  You can sell recreational, however -- in

7     whatever form it is, but you cannot sell edibles.

8             The impact on finances and that sort

9     of thing, I have not a clue, but that's not my job

10    to figure out how that would pan out for them

11    financially.  It's just -- if that's a concern that

12    we have, then that would be one way to address it.

13    And it doesn't mean -- it doesn't not [sic] mean,

14    Scott, that they could come back in a year or two

15    and say we have this conditional use and we would

16    like it reviewed and revised?

17            SCOTT:  Actually, if I can interject,

18    we did anticipate this being a possibility.

19            COMMISSIONER:  Okay.

20            SCOTT:  Sorry.  Just one second.  I've

21    got people all over the place tonight.

22            So here is the deal with that.  I'm

23    sorry.  Here is the deal with that.  So if the

24    applicant would voluntarily agree that they wouldn't

25    have edibles, but you cannot require it.

Notice of Removal
Defs' Ex. 2 (37 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

27

1            COMMISSIONER:  You can't require it?

2            SCOTT:  No.  No.  If they would agree

3    to it, that's one thing.  But you cannot require

4    that as a conditional use.

5            COMMISSIONER:  Why not?

6            COMMISSIONER:  Why not?  Because we

7    can -- you have to have a filter.  You can roast

8    coffee.  You have to have a filter.  What's

9    different about this?  I don't understand that.

10            SCOTT:  They just said, no, you can't

11    do it.

12            COMMISSIONER:  Who said no?

13            SCOTT:  The city attorney.

14            (Crosstalk.)

15            MR. SIMPSON:  Is there any way I could

16    say something here?

17            COMMISSIONER:  No.  It's a closed.

18            (Crosstalk.)

19            UNIDENTIFIED FEMALE SPEAKER:  He

20    didn't clarify?

21            SCOTT:  You were on the conference

22    call, too.  Basically, he said that there are

23    conditions that you can place upon a business or a

24    potential business use, and then there's ones that

25    have to be -- that have to be voluntary.  And he

Notice of Removal
Defs' Ex. 2 (38 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

28

1    indicated that other shops are allowed to have every

2    type of product, and this would be an undue -- it's

3    an undue condition.

4                    But, he said, if they voluntarily did

5    that -- basically the bottom line was typically

6    commissions can't do it, but if they voluntarily

7    agree that they would do that, then can you can put

8    it as a condition.

9                    COMMISSIONER:  Okay.  So Gary

10   (inaudible) talk about the concern of children as it

11   related to edibles?

12                   COMMISSIONER:  Yeah, yeah.  You mean

13   which -- it broke it down into that 9 percent was

14   due to the product not being in a child-resistant

15   container, and 40 scenarios were poor child

16   supervision or product storage was the issue, and

17   the edible products were responsible for 51

18   exposures, or 52 percent.

19                   COMMISSIONER:  That was for poor

20   supervision.  Right?

21                   COMMISSIONER:  How do you govern

22   against that?

23                   COMMISSIONER:  No, you can't, and

24   that's why I think that the idea of edibles, I mean,

25   it knocks out the biggest --

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

29

1           COMMISSIONER:  It's not the fact that

2    they are selling edibles.  It's just the parents put

3    them where the kids can get at them?

4           COMMISSIONER:  And this was the other

5    part --

6           COMMISSIONER:  Okay.

7           COMMISSIONER:  So there was the --

8    well, obviously, if there's edibles, they left it

9    out.

10          COMMISSIONER:  Yeah.

11          COMMISSIONER:  Yeah.

12          COMMISSIONER:  So I know I don't get

13   to vote because I didn't know that we had to listen

14   to the tapes, that's my fault, but I did spend a lot

15   of time thinking about this because -- so I had some

16   thoughts here, and I don't know if they pertain

17   here.

18          Speaking of -- the first one was the

19   criteria of what we have to decide on here and, you

20   know, you go to boilerplate, well, you know, it's so

21   far from the streets and all the nuts and bolts --

22          SCOTT:  Well -- actually -- actually,

23   Rob, I'm going -- I don't even think you are allowed

24   to participate because you weren't at the first part

25   of the hearing.

Notice of Removal
Defs' Ex. 2 (40 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

30

```
 1                    COMMISSIONER:  Really?

 2                    SCOTT:  Yeah.

 3                    COMMISSIONER:  I don't even have to be

 4   here?

 5                    SCOTT:  Well, that's true.  That's

 6   true.  But you're here.  I mean, you know, it's one

 7   of those things that from a procedural standpoint --

 8                    COMMISSIONER:  So I could speak in the

 9   public part?

10                    SCOTT:  You could.  You could go out

11   there, and if they open -- if they open up and

12   recognize the public, you can certainly do that.

13                    COMMISSIONER:  Okay.

14                    SCOTT:  Yes.  But as an acting

15   commissioner, I have to -- I have to stop that.  I

16   apologize.

17                    COMMISSIONER:  So take a motion back

18   up?

19                    COMMISSIONER:  Yes.

20                    COMMISSIONER:  Okay.  I move that we

21   reopen this for more public testimony.

22                    COMMISSIONER:  Okay.  I kind of want

23   to go through and have everybody -- I just feel like

24   we've kind of hogged it.  I want to get to Mike and

25   Brian and then we'll open up.  Is that okay?
```

Notice of Removal
Defs' Ex. 2 (41 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

31

1          COMMISSIONER:  Sure.  I'll hold my

2   motion then until --

3          COMMISSIONER:  That way we'll get to

4   hear everything.  Mike, what are your thoughts?

5          COMMISSIONER:  There was a whole lot

6   more going on over this last week than when I first

7   came in thinking (inaudible) what we were doing.

8   And I'm really having -- I'm having some problems

9   with, you know, adverse conditions, you know, and

10  the actual value of property around the facility.  I

11  know I would not buy a home next to or that close to

12  a facility.

13          So I listened to what everybody has

14  been saying.  Everybody has valid, you know,

15  arguments.  I mean, there's some good things and

16  some bad things.  I know the City needs revenue, but

17  how bad do they need the revenue?

18          But at this point I've changed my mind

19  from last week, Scott.  I'm really not in favor of

20  selling recreational marijuana in Brownsville.

21          COMMISSIONER:  Okay.  Brian?

22          COMMISSIONER:  I'm still right where I

23  was before.  I still, you know -- I know the

24  attorney said this and this and this about the park,

25  but still, children play in it.  We're 600 feet

Notice of Removal
Defs' Ex. 2 (42 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

32

1   away, and we can put whatever label we want on it.

2   I mean, we have to think about this.  This is

3   against -- I mean, granted, the State of Oregon

4   passed it, but we're doing something that's against

5   federal law here, and I just -- I just can't vote

6   yes.

7                   COMMISSIONER:  Okay.  Thanks, Brian.

8                   COMMISSIONER:  My position still

9   stands with the adversely affecting the neighbors,

10  property values, included in that, so --

11                  COMMISSIONER:  Okay.  All right.  All

12  those in favor to open up to public opinion --

13                  COMMISSIONER:  Don't you want my

14  opinion?

15                  COMMISSIONER:  I thought you had --

16                  COMMISSIONER:  Shocked and appalled.

17                  COMMISSIONER:  I'm sorry.

18                  COMMISSIONER:  Well, I asked

19  questions.

20                  COMMISSIONER:  Yes.  I'm sorry you

21  didn't make a formal statement.  (Inaudible).

22                  COMMISSIONER:  You're back pedaling

23  now.  Okay, so -- so are we actually doing a re-vote

24  or we're just finishing a discussion?  We're just

25  getting final discussion points?

Notice of Removal
Defs' Ex. 2 (43 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

33

```
 1              COMMISSIONER:  Yeah.
 2              COMMISSIONER:  Is that what I'm
 3   understanding?
 4              COMMISSIONER:  Yeah.
 5              COMMISSIONER:  Then I guess I do thank
 6   you, but I guess I pretty much asked the questions
 7   and Scott really clarified.  I wasn't aware we
 8   couldn't do a conditional use permit based on not
 9   selling edibles so, you know, that was good --
10   that's important information for me to have.
11              I also think that -- you know, I
12   don't, I don't use marijuana medically,
13   recreationally, or anything, but I think we err if
14   we try to overregulate.
15              And when you can go to Corvallis,
16   Albany, Lebanon, Sweet Home -- I don't know where
17   all else they have -- and bring edibles back here,
18   you know, just because you buy it -- don't buy it in
19   Brownsville doesn't mean that you don't have the
20   same risks to children and the same negligent
21   parents who -- you know, they have it in the house
22   and they are not treating it as the drug that it is
23   or having the effect that it does on children.
24              And I think there's a limit to what we
25   can try and regulate.  And I -- I just feel that
```

Notice of Removal
Defs' Ex. 2 (44 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

34

1    they have met the conditions.  They have done what

2    the City has -- (inaudible) questions.  And I

3    absolutely agree, we can't go back and suddenly

4    change 12 years of history and decide to put in

5    another criteria.  That's not fair to anybody

6    anywhere.  We need to finish this out and then

7    revisit that and alter it if that's what we deem

8    needs to be done.  But we have to use the same

9    criteria that we've been using for the last 12

10   years.

11              And if you look through this, the four

12   points that the City made, and as far as I'm

13   concerned, they have -- personal opinion aside --

14   they have met the criteria required for this

15   conditional use, so I stand with my original

16   position, and that is to vote for it.

17              COMMISSIONER:  Okay.  Thank you.  All

18   those in favor of opening up to public discussion?

19   Looks unanimous.  Okay.

20              The applicants can go ahead and speak

21   if you'd like.

22              MR. SIMPSON:  Thank you.  I came to

23   this meeting two weeks ago thinking this was just

24   going to be just a rubber stamp procedure.  We've

25   met all the requirements, and my feeling is based on

Notice of Removal
Defs' Ex. 2 (45 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

35

1    the State -- or the vote that we had last November

2    that says the State says you have to let -- let a

3    dispensary open up if the majority of voters say

4    yes, and they did.

5                    So this whole discussion to me seems

6    very, very irrelevant to what's going on other than

7    what Dan or Don and Trish had said.  They are spot

8    on.  I applaud what you're saying because we meet

9    the requirements and the voters in Brownsville said

10   yes.  We won by three votes.  We got the majority.

11   If we would have lost by three votes, this meeting

12   wouldn't be here.  You wouldn't say, well, it's so

13   close.  Well, we might revisit this.  No.

14                   As far as edibles go, there are a lot

15   of people that don't like to smoke it, a lot of

16   people.  Especially the older generations, they

17   don't smoke, period.  And they take tinctures, they

18   take edibles responsibly.

19                   How much -- how many news stories have

20   we seen in the Democrat Herald lately about people

21   in Albany, Corvallis, Lebanon, Sweet Home -- not

22   Sweet Home yet.  They are going recreational -- how

23   many news stories have you seen in the last month

24   about local people in those towns getting -- their

25   children going to the hospital?  If it happened, it

Notice of Removal
Defs' Ex. 2 (46 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

36

1   would be all over the paper.  I haven't even seen

2   one since recreational has gone legal in this area.

3                   So this discussion you're having is

4   really bothering me because I feel that it's totally

5   irrelevant.  We meet all the requirements.

6                   And -- and the State says you have to

7   allow it somewhere in Brownsville.  That's the law.

8   Right, Scott?

9                   SCOTT:  Yes.

10                  MR. SIMPSON:  Okay.

11                  SCOTT:  That's what they say, yes.

12                  MR. SIMPSON:  That's all I'm going to

13   say right now.  Thank you.

14                  MS. ASHFORD:  We could be selling

15   edibles right now and who would know the difference

16   medically?  Medical edibles are twice as strong as

17   recreational which could mean that any child that

18   got their hands on a medical edible would be in

19   twice as bad of shape.  Recreational edibles are

20   half as strong.

21                  These items -- I called the OLCC, by

22   the way.  They are not sold in gummy bear shapes or

23   wormy shapes or attractive candy shapes.  They are

24   in little adult-looking things.  They are in

25   packages that I can't even hardly open.  Anybody

Notice of Removal
Defs' Ex. 2 (47 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

37

1    that's leaving stuff like this around for a child to

2    get ahold of is an irresponsible adult, and they

3    should not be allowed to purchase those items.

4                 Somebody like us who are responsible

5    and are following all guidelines, local and state,

6    should not be punished for someone else's

7    irresponsible actions for their children.

8                 I never let my children get their

9    hands on any product like that.  I never let my

10   children have alcohol, which is much more readily

11   available, easy, easy, easier for children, and much

12   more deadly.

13                So we could be selling edibles right

14   now.  Nobody would know the difference.  It's

15   perfectly legal under the medical license that we

16   possess.  So then what's the difference selling

17   medical from recreational?

18                Well, number one, a medical license

19   holder only has to be 18 years of age to come into

20   our dispensary.  Recreational, you have to be 21 or

21   older.  The packaging is the same.  The strength is

22   half for the product.

23                The OLCC is extremely strict.  They

24   are much stricter than the medical by far.  And it's

25   all going OLCC, so this is going to be even more

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

38

```
 1    closely regulated.

 2              There has to be reasonable zoning in

 3    the City of Brownsville, and you all know that, so

 4    by restricting us by either a pocket park or by what

 5    we sell is basically restricting us and is going to

 6    result in an expensive lawsuit against the City of

 7    Brownsville.  And I'm not threatening anyone.  I'm

 8    just stating a fact.

 9              We've been putting up with this for

10    three and a half years, and I've had enough.  You're

11    not being reasonable here.  And we are perfectly

12    willing to follow guidelines that are set forth by

13    Brownsville, and we've bent over backwards to do so.

14    And we've met all the State criteria, which is

15    extensive and extremely strict.  And we are the

16    model -- I talked to them, and they said that as far

17    as our bookkeeping goes and all of our recordkeeping

18    goes and keeping track of all of our product that we

19    sell, we are head and shoulders above anyone else in

20    the state right now.  So you should be proud of what

21    we're doing.  We're closing down the black market.

22              I've heard that from people on the

23    street that have come in and said, "You're doing it.

24    This is what you set out to do and your

25    accomplishing it.  You're basically shutting down
```

Notice of Removal
Defs' Ex. 2 (49 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

39

1   sources for children to get their hands on these

2   products in our community, and thank you."  I've

3   been told that.

4                  So you should be ashamed of yourselves

5   for putting this type of restriction on people like

6   us when we are trying our best to help our

7   community.

8                  COMMISSIONER:  Okay.  Anybody else

9   like to speak in favor of the application?

10                  COMMISSIONER:  I don't know if I'm in

11   favor, per se, but I guess I will.

12                  COMMISSIONER:  You can take a neutral

13   position.

14                  COMMISSIONER:  Name and address,

15   serial number.

16                  COMMISSIONER:  It's the whole process.

17                  COMMISSIONER:  Just for the record, go

18   ahead and state your name and address, please, Rob.

19                  COMMISSIONER:  (Inaudible) City

20   Councilor, planning commission member.  Nonvoting at

21   this time.

22                  So I do apologize for missing the last

23   meeting.  I had a family emergency.  Father-in-law

24   broke his hip.  Had to take off in a rush, so I

25   apologize for that.

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

40

1           I just spent a lot of time thinking

2     about this and, you know, researching it back and

3     forth to see the pros and cons of all of this.

4           One of the things -- and Don kind of

5     touched on it -- the criteria that we're supposed to

6     be using to do this.  A lot of the criteria is just

7     very black and white.  You know, are the setbacks

8     right?  Is the utilities right?  Is the hedging

9     right?  Blah, blah, blah.

10          You know, the nuts and bolts criteria

11    we look at, it all comes down to, as you say, very

12    subjective.  Is it an asset to the community?  Is it

13    a (inaudible) to the community?

14          So that's that kind of nebulous thing

15    that everyone is pulling in their personal opinions

16    to make this decision, which is probably what they

17    are supposed to be doing.  But, you know, it is a

18    personal opinion that everyone is pulling in here

19    instead of, you know, sitting down and reading

20    paragraph 3B and saying, yes, it matches that, it

21    matches that, it matches that.

22          As Don has said, it covers all of them

23    except for do you like it or do you not like it?  I

24    guess that's what it comes down to.

25          One of the things I did look up and

Notice of Removal
Defs' Ex. 2 (51 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

41

1    say the majority of the Oregon voters approved it

2    and the majority of the Brownsville voters did

3    approve it, and so that really -- I mean, it sounds

4    like the vote is going to fail here since

5    (inaudible) no on it.  It's going to go to the City

6    Council, where it should go anyway.  You know, let

7    the City Council earn their money and do what they

8    are supposed to do here.  I mean, whether we give it

9    a blessing or not a blessing, it's probably going to

10   end up there anyway.  So I don't know (inaudible),

11   but it's going to end up at the City Council and

12   they are obviously going to have to make another

13   decision on that.

14           I do think there's a lot of personal

15   responsibility in recreational and the edibles as

16   you talk about.  You know, it does come down to a

17   responsible parent.  It doesn't matter what kind of

18   medication you have with kids, Vicodin or Miller

19   Light, you know.  If you're not a responsible adult

20   and you don't -- and you abuse it -- you know,

21   there's a thousand vices out there in the world that

22   can trip you up whether it's sex, drugs, rock &

23   roll, whatever it is, gambling, food, you know, you

24   can overdo it in any of those, so it does come down

25   to being a responsible adult.

Notice of Removal
Defs' Ex. 2 (52 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

42

```
 1              And if you think that people in our
 2    community aren't responsible enough to handle it,
 3    you know, that's really what you're doing.  I don't
 4    know that you can say that, well, people in our
 5    community aren't responsible enough to put their
 6    edibles away.
 7              Well, that's like saying it's not
 8    responsible enough to lock up your liquor cabinet.
 9    It's a legitimate point, but I don't think you can
10    regulate every household and say, well, you can't
11    sell it here because you're not responsible enough.
12    That's my pin on the edibles.
13              I mean, I do see that there is a risk
14    hazard, but if you're going to be responsible enough
15    to buy it, you should be responsible enough to put
16    it away just like your prescription drugs, just like
17    your alcohol.
18              One of the criterias I was thinking
19    that we can put on there was -- this is what I don't
20    like about -- you know, you go to Eugene and you see
21    all these flashy signs with the balloon blowup guy
22    and the guy spinning the sign like a pizza, you
23    know.  You don't get to do that for alcohol.  OLCC
24    doesn't allow that for the liquor store to do that,
25    and I don't think that should be allowed on the
```

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

43

1   freeway if there was any kind of flashy neon signs.

2   That would be a criteria that we would -- that I

3   would like to see put on it if it did pass or it

4   does pass.

5              As far as the zoning of where it's at,

6   I think the City Council -- or, I mean, the planning

7   commission did a -- we did extensive work to put it

8   where it is.  We thought that was the best location

9   in the whole town for that.  And so to say, well,

10  that's not a good location, that's the best location

11  we all came up with for a place to put it.

12             So to say it's not the right place,

13  well, we didn't do our job, then, if you're saying

14  it's not the right place to have it.  (Inaudible)

15  commercial, not on a highway, out of downtown,

16  (inaudible) criteria are met long ago.

17             So I don't know if you can do a

18  conditional use for a year and -- trial year -- and

19  see how it goes and see if there are any complaints.

20  But I guess if I was going to vote -- which I don't

21  get -- but if I was going to vote, I would vote in

22  favor of allowing the application to proceed.

23             COMMISSIONER:  Thank you.  Thanks,

24  Rob.  And would you like to speak against or for the

25  applicant?  Or just listening?

Notice of Removal
Defs' Ex. 2 (54 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

44

1           UNIDENTIFIED FEMALE SPEAKER:  If I was

2   speaking, I would be speaking against, and so I

3   suppose just to give you some balance --

4           COMMISSIONER:  You submitted the

5   letter.  Right?

6           UNIDENTIFIED FEMALE SPEAKER:  Yes.

7   And you have that before you.  I assume everyone has

8   a copy.  I have nothing to add other than that.

9           COMMISSIONER:  Okay.  Before we close

10  the public portion, are there any specific questions

11  anybody would like to ask the Simpsons?

12           (Inaudible.)

13           UNIDENTIFIED FEMALE SPEAKER:  I

14  believe Rob brought up a point -- his final point

15  was -- if I remember right, I don't know if we can

16  do a conditional use permit for one year.

17  (Inaudible).

18           SCOTT:  I can.  So going back to the

19  dog situation that you had.  You know, the planning

20  commission, as part of the report that staff brought

21  to you, has that in there that, you know, you can

22  put a condition on it to see what those, if any,

23  adverse impacts are over the course of that year,

24  and it can be re-evaluated.

25           UNIDENTIFIED FEMALE SPEAKER:  Okay.

Notice of Removal
Defs' Ex. 2 (55 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

45

1          SCOTT:  So that is something -- I also

2    want to -- I also want to say something because

3    Mr. Simpson made a very valid point, too, that I

4    want to address.

5          So, you know, bottom line is the State

6    of Oregon says, absolutely, yes, this is all legal,

7    right.  So the bottom line is locally, of course, we

8    have due process.  So as I think Mr. Rob Wendgren

9    made the point, you know, if -- regardless of how it

10   turns out, if it turns out not in favor of the

11   applicant, due process does happen.

12          So they will -- they will be required

13   to go to the Council for that.  If the Council would

14   uphold the denial, then it will go to the Land Use

15   Board of Appeals -- what is it?

16          COMMISSIONER:  LUBA.

17          SCOTT:  LUBA, yeah, Land Use Board of

18   appeals.  That didn't sound right to me for some

19   reason in my mind.

20          Anyway, the attorney said on that

21   front -- I'm just telling you what the attorney

22   said -- is -- the bottom line is the Land Use Board

23   of Appeals is going to stamp that "granted" and he's

24   going to send it back down to me as city

25   administrator and send it to the Mayor's attention

ccreporting.com

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

46

1   and say, hey, you guys, you know, do your work.

2   This is -- this is required.

3                    That does not mean that you have to

4   vote a certain way.  It means that you look at the

5   criteria.  Again, it gets into that scale situation

6   that I talked about earlier.  So I'm just giving you

7   a broadbrush stroke of what the whole process would

8   look like.

9                    COMMISSIONER:  So now would be the

10  time to put conditions on it that we would want

11  before it goes to Council?  LUBA?

12                   SCOTT:  Yes.  Well, either you do

13  tonight or it goes to Council and they do it.

14                   COMMISSIONER:  It won't go to Council

15  if we approve it.

16                   SCOTT:  Truth.  That is truth.

17                   COMMISSIONER:  It won't go to Council.

18                   SCOTT:  Right.

19                   COMMISSIONER:  And I do take

20  exception, Rob, that -- yeah, I think the planning

21  commission -- I think this is an appropriate

22  conditional -- it's an appropriate thing for us to

23  review.

24                   And your comment about it really

25  should end up in the Council anyway, I'm just saying

Notice of Removal
Defs' Ex. 2 (57 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

1    -- just saying.

2                 COMMISSIONER:  Go ahead.

3                 COMMISSIONER:  Personal opinion.

4                 COMMISSIONER:  I mean, is it a moot

5    point that it's legal to have it here and like what

6    are we doing?  Are we just here to put some

7    conditional use on it?  Or are we just here to voice

8    our opinion for the Council?

9                 I mean, if what they say is true and

10   what you say is true, they can legally have a store,

11   what are we doing?

12                SCOTT:  As long as they meet the

13   conditional use.

14                COMMISSIONER:  Why do we even have to

15   vote?

16                COMMISSIONER:  I've been listening to

17   all of this very carefully because -- from a

18   personal standpoint, I tried marijuana twice, and I

19   hated it both times.  I was in my twenties, and I

20   hated it.  I don't know why anybody would want to

21   smoke it, and I don't like people to smoke it and I

22   don't like when they use it, but, frankly, that's

23   none of my business so long as they -- I don't like

24   people to get drunk either.

25                But I don't see in here anywhere where

Notice of Removal
Defs' Ex. 2 (58 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

48

```
 1   it says we're supposed to vote based upon how we
 2   feel about it.  And if we use our personal opinion
 3   as to the use of marijuana, we're going outside of
 4   all this criteria.  We're not -- we're not passing a
 5   moral vote here as to whether it's right or wrong.
 6   We're just passing a vote on whether or not they
 7   have done what all of this paperwork says they are
 8   supposed to do, whether we agree with it or not.
 9              COMMISSIONER:  And I don't think
10   (inaudible).
11              COMMISSIONER:  Okay.
12              COMMISSIONER:  It's like -- take it
13   back to the coffee is -- some people felt that -- I
14   said that I would love the smell of coffee.  Other
15   people said they wouldn't like the smell of coffee.
16   Some people think that dogs barking are annoying.
17   Other people say that's part of living in the
18   country.
19              So -- but still, we approached it as
20   kind of scientifically as we could, weighing those
21   potential adverse effects against the surrounding
22   uses.
23              COMMISSIONER:  Correct.
24              COMMISSIONER:  So when I look at this
25   -- and I don't have anything against marijuana
```

Notice of Removal
Defs' Ex. 2 (59 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

49

1   because I was strongly in favor of the medical

2   marijuana and I told the Simpsons that -- I'm sorry,

3   I keep calling you the Simpsons -- but Ashford and

4   Simpsons -- however, I do -- came across is what I

5   feel is some empirical evidence that tells me that

6   now this part of the, criteria there is an adverse

7   impact that I feel there is some scientific evidence

8   for.

9               I'm okay with medical marijuana and

10  the use or even people using it whenever they want

11  to.  But now I'm being asked does recreational

12  potentially have an adverse effect?  So -- but it's

13  hard not to separate -- it's a fine line between

14  personal feelings and when you're determining

15  adverse.

16              COMMISSIONER:  Well, I agree, and I'm

17  not necessarily making (inaudible) my remarks.

18              COMMISSIONER:  Yeah, I know.

19              COMMISSIONER:  But to me, we should

20  not be voting on whether we are for or against --

21              COMMISSIONER:  I agree.

22              COMMISSIONER:  -- the use of

23  marijuana.

24              COMMISSIONER:  I agree.

25              COMMISSIONER:  Our personal opinion

Notice of Removal
Defs' Ex. 2 (60 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

50

```
 1   should stay out of this whole thing together.
 2                 COMMISSIONER:  Right.
 3                 COMMISSIONER:  Yeah.
 4                 COMMISSIONER:  And just based upon
 5   some of the discussions I've heard among this group
 6   of people, I've cringed, because I've sensed that
 7   they are projecting their personal feelings into
 8   this rather than what it says on the paper.
 9                 And I would urge for us not to do
10   that.  This is not a place for us to vote our
11   personal opinions on morality or whatever you would
12   call it.
13                 COMMISSIONER:  Well, the truth be
14   known on my part, if you're thinking about me, I
15   could care less if everybody smoked pot.  I could
16   absolutely care less.  But I do not believe that
17   facility fits in this area.  I just don't.
18                 COMMISSIONER:  Why?
19                 COMMISSIONER:  Just doesn't.
20                 COMMISSIONER:  Why?
21                 COMMISSIONER:  It doesn't -- I
22   believe -- okay, so if we went down to B on this, it
23   doesn't fit there.
24                 COMMISSIONER:  On where?
25                 COMMISSIONER:  In my opinion.  Weren't
```

Notice of Removal
Defs' Ex. 2 (61 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

51

| | |
|---|---|
| 1 | we discussing B, adverse? |
| 2 | COMMISSIONER:  Page 6. |
| 3 | COMMISSIONER:  Page 6B. |
| 4 | COMMISSIONER:  Right. |
| 5 | COMMISSIONER:  1B? |
| 6 | COMMISSIONER:  Right. |
| 7 | COMMISSIONER:  Adverse impact. |
| 8 | COMMISSIONER:  Right (inaudible). |
| 9 | COMMISSIONER:  Okay. |
| 10 | COMMISSIONER:  And adversely that, as |
| 11 | we call it the pocket park, that's going to |
| 12 | adversely affect that.  That's my opinion. |
| 13 | COMMISSIONER:  Okay.  Well, that's |
| 14 | fine.  Yeah, yeah. |
| 15 | COMMISSIONER:  Okay.  I probably need |
| 16 | to officially close the public portion of the |
| 17 | meeting again, so that is closed. |
| 18 | Any members have any further topics |
| 19 | for further discussion? |
| 20 | COMMISSIONER:  Are you ready for a |
| 21 | motion? |
| 22 | COMMISSIONER:  We've got to take a |
| 23 | vote first, don't we? |
| 24 | SCOTT:  You need a motion. |
| 25 | COMMISSIONER:  I mean you can -- |

Notice of Removal
Defs' Ex. 2 (62 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

52

1         COMMISSIONER:  Yeah.  So --
2         COMMISSIONER:  Put it out there for
3    the vote.  I'm going to take a motion.
4         COMMISSIONER:  It sounds like we can
5    do that.
6         COMMISSIONER:  I would move that
7    (inaudible) -- well written out.  I just have to
8    find it.
9         I would move that we approve the
10   application for the sale of recreational marijuana
11   and include with that the conditions of approval
12   that staff was recommending on page 10 of their
13   report.
14        COMMISSIONER:  Okay.  Thank you, Don.
15   Is there a second for that motion?
16        COMMISSIONER:  I second it.
17        COMMISSIONER:  Mike seconds the
18   motion.  Let's take a vote.  Brian, what say you?
19   For or against?
20        BRIAN:  Against.
21        COMMISSIONER:  Okay.  (Inaudible).
22        COMMISSIONER:  Against.
23        COMMISSIONER:  Okay.  (Inaudible).
24        COMMISSIONER:  For.
25        COMMISSIONER:  For.

Notice of Removal
Defs' Ex. 2 (63 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

53

| | |
|---|---|
| 1 | COMMISSIONER:  Against. |
| 2 | COMMISSIONER:  Against. |
| 3 | COMMISSIONER:  So it's four to two |
| 4 | against. |
| 5 | COMMISSIONER:  So what do we do from |
| 6 | here? |
| 7 | SCOTT:  Okay.  So what happens from |
| 8 | here, the vote was called, the vote is four-two |
| 9 | against the use.  What will happen now is within |
| 10 | five days, Mrs. Coleman will draft the notice of |
| 11 | decision.  Mr. and Ms. Ashford and Simpson will be |
| 12 | able to appeal that decision within 15 days of that |
| 13 | notice to the City Council, and they will hear all |
| 14 | of the testimony and everything at the City Council |
| 15 | meeting in September. |
| 16 | COMMISSIONER:  Okay.  So we just close |
| 17 | out the meeting? |
| 18 | SCOTT:  Well, we've got -- there's |
| 19 | another agenda item.  But, yes, that portion of the |
| 20 | meeting. |
| 21 | COMMISSIONER:  Go ahead and close out |
| 22 | the request for conditional use. |
| 23 | SCOTT:  There was a roll call vote |
| 24 | taken.  Did you record the roll call? |
| 25 | UNIDENTIFIED FEMALE SPEAKER:  I did. |

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

54

1    Just to be clear, Commissioner Wyant was a no.

2    MacDaniel was a no.  Thompson was a yes.  Andrews

3    was a yes.  Compton was a no.  And Kometz was a no.

4                   COMMISSIONER:  And Rob abstains.

5                   UNIDENTIFIED FEMALE SPEAKER:

6    (Inaudible) right.  Okay.  Thank you.

7                        --o0o--

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Notice of Removal
Defs' Ex. 2 (65 of 66)

City of Brownsville Planning Commission Meeting
Transcribed from CD Simpson July 31, 2017

55

```
 1   STATE OF OREGON   )

 2                     )  ss.

 3   County of Lane    )

 4

 5

 6        I, Sara Fahey Wilson, CSR, a Certified

 7   Shorthand Reporter for the State of Oregon, certify

 8   that the transcript is a true record of the

 9   transcription of the audio recording; that the

10   foregoing transcript consisting of 54 pages contains

11   a full, true, and correct transcript of said audio

12   recording so reported by me to the best of my

13   ability on said date.

14        IN WITNESS WHEREOF, I have set my hand

15   this 11th day of September 2017, in the City of

16   Eugene, County of Lane, State of Oregon.

17

18

19

20

21

22

23   Sara Fahey Wilson, CSR

24   CSR No. 06-0400

25   Expires:  March 31, 2020
```

**Notice of Removal**
Defs' Ex. 2 (66 of 66)