IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GAYLE ASHFORD,

               Plaintiff,

     v.

CITY OF BROWNSVILLE, a municipal corporation of Oregon, and SCOTT MCDOWELL, City Administrator,

               Defendants.

Case No. 6:19-cv-01540-IM

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Brian Michaels, 259 East 5th Avenue Ste 300-D, Eugene, OR 97401. Marianne G. Dugan, Civil Liberties Defense Center, 1711 Willamette St. Suite 301 #359, Eugene, OR 97401. Attorneys for Plaintiff.

Kenneth S. Montoya, Montoya Law LLC, 350 Mission Street SE Suite 202, Salem, OR 97302. Attorney for Defendants.

**IMMERGUT, District Judge.**

       This action comes before this Court on a Motion for Summary Judgment filed by

Defendants the City of Brownsville ("the City") and City Administrator S. Scott McDowell

(collectively, "Defendants"), ECF 26. Defendants move for summary judgment on all of Plaintiff

Gayle Ashford's claims. A hearing on the motion was held on September 20, 2023. Minute Order, ECF 52.

For the reasons below, Defendants' Motion for Summary Judgment is GRANTED. Plaintiff claims that Defendants violated the First and Fourteenth Amendments of the United States Constitution by effectively denying Plaintiff a conditional license to sell recreational marijuana. However, Plaintiff has failed to prove a genuine dispute of material fact on whether she sought a license to engage in protected expression under the freedom of speech clause of the First Amendment. Rather, the undisputed evidence shows that she sought the license to engage in unprotected commercial activity. Plaintiff has also failed to prove a genuine dispute of material fact regarding whether she was singled out for worse treatment relative to others applying for the same conditional license as her, as she must, under an equal protection class-of-one claim. And in the alternative, for her claims against Defendant McDowell, Plaintiff cannot defeat the defense of qualified immunity. She has failed to present clearly established case law such that, in the summer of 2017, a reasonable government official in Defendant McDowell's position would have had notice that he was violating Plaintiff's First and Fourteenth Amendment rights.

## BACKGROUND

In 2014, a majority of Oregon voters passed Oregon Ballot Measure 91, which decriminalized the possession, in-state manufacturing, processing, and sale of marijuana to adults over the age of 21. Declaration of S. Scott McDowell ("McDowell Decl."), ECF 27 ¶ 3. The Measure likewise provided for state regulation of the new marijuana industry, namely through licensing and taxation schemes. *Id.*

In response to the passage of Ballot Measure 91, the Brownsville City Council adopted Ordinance No. 751 on March 24, 2015. *Id.* ¶ 4. The Ordinance amended Title 15 of the Brownsville Municipal Code to allow marijuana dispensaries to operate as conditional permitted

PAGE 2 – OPINION AND ORDER

uses within a commercial zone. *Id.* ¶ 4. Chapter 15.111 of the Code imposes conditions in addition to those for ordinary conditional uses, *see* Brownsville Municipal Code ch. 15.125. These additional conditions include, among other things, that a "marijuana use"—a catch-all term for marijuana production and sales—cannot be located "within 1,000 feet of [a] public or private elementary, secondary, or career school"; "[w]ithin 1,000 feet of a public library"; "within 1,000 feet of a public park, playground, recreational facility, or athletic field"; or "within 1,000 feet of another marijuana use." Brownsville Municipal Code § 15.111.020(B)(1).

Three months after the adoption of Ordinance No. 751, on June 30, 2015, the Oregon Legislature enacted and the Governor of Oregon signed House Bill 3400, which implemented Ballot Measure 91. House Bill 3400 tasked the Oregon Liquor Control Commission with establishing licensing qualifications for marijuana businesses. Declaration of Kenneth S. Montoya ("Montoya Decl."), ECF 28 ¶ 3; House Bill 3400 §§ 2–3, ECF 28-1, Ex. 6 at 4–6. House Bill 3400 also authorized local taxation of marijuana sales and, under certain conditions, permitted localities to "order an election on the question whether the operation of licensed premises should be prohibited in the city or county." Montoya Decl., ECF 28 ¶ 3; House Bill 3400 § 58, ECF 28-1, Ex. 6 at 24–25.

Following the passage of House Bill 3400, the City of Brownsville held a vote, Ballot Measure 22-149, on whether to prohibit recreational and marijuana facilities within the city limits. McDowell Decl., ECF 27 ¶ 5. On November 8, 2016, the Measure failed by a three-vote margin (445 to 442). *Id.*

The events leading to this case began on May 30, 2017, when Plaintiff submitted her Commercial Conditional Use Application to the City for authorization to run a "[r]ecreational/medical [m]arijuana [d]ispensary." McDowell Decl., ECF 27 ¶ 6; Plaintiff's

Conditional Use Application ("Pl.'s App."), ECF 27-1, Ex. 1 at 1. Plaintiff owned a medical marijuana dispensary, Green Cross Dispensary, LLC, which she ran with her partner Randy Simpson, Deposition of Gayle Lynne Ashford, ECF 28-4, Ex. 9 at 2 (16:4), and she sought to expand her business to recreational marijuana. Plaintiff listed the "[p]resent [u]se of [the] [p]roperty" as "[m]edical [m]arijuana [d]ispensary." Pl.'s App., ECF 27-1, Ex. 1 at 1.

A month later, on June 28, 2017, the staff of the City of Brownsville Planning Commission submitted a report to the Commission in preparation for a hearing on Plaintiff's application. McDowell Decl., ECF 27 ¶ 7; City Staff Report, ECF 27-2, Ex. 2. The staff found "that [Plaintiff's] proposal [was] consistent with the applicable policies of the Brownsville Comprehensive Plan," City Staff Report, ECF 27-2, Ex. 2 at 7, and further found that the proposal was consistent with the conditions set by Brownsville Ordinance No. 751, *id.* at 8.

A few weeks later, on July 17, 2017, the City Planning Commission held its hearing to consider Plaintiff's application. McDowell Decl., ECF 27 ¶ 8. Plaintiff spoke about her application and answered questions from the members of the Commission. *Id.* ¶ 8. The Commission then heard comments from community members, with some supporting and others opposing the application. *Id.* Several of the Commission's members voiced concern that voting for the conditional use permit would amount to violating their oaths to uphold federal law in addition to state and local laws. *Id.* Because one Commission member did not attend the meeting, only six members voted on Plaintiff's application, and they split three-to-three. *Id.* The Commission then agreed to table the meeting and reconvene at a later point. Excerpt from Transcript for July 31, 2017 Hearing ("July 31 Tr."), ECF 36-2 at 2:20–24.

Two weeks later, on July 31, 2017, the Planning Commission reconvened to break the tie from the hearing over Plaintiff's application. Defendant McDowell, the City Administrator,

attended this meeting. *Id.* at 2:6–7. Again, the Commission had only six participating members because the member who had missed the last hearing did not listen to the audio of that session and was thus barred from participating under Commission rules. *Id.* at 4:6–7; McDowell Decl., ECF 27 ¶ 9. Defendant McDowell explained to the Commission that the City had written its marijuana permitting code—i.e., Ordinance No. 751—to avoid "zon[ing] out . . . anyone wanting to do marijuana" and thus avoid providing those people "legal grounds to actually come against the City with a lawsuit." July 31 Tr., ECF 36-2 at 6:18–23. He also advised the Commission on whether it could approve a conditional use permit "with the exception of edibles." *Id.* at 9:1–7; Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.'s Resp."), ECF 35 at 10. Defendant McDowell instructed the Commission that the "applicant would" have to "voluntarily agree that they wouldn't have edibles" but that the Commission could not "require it." July 31 Tr., ECF 36-2 at 9:22–25; Pl.'s Resp., ECF 35 at 10. In the end, the Commission voted to deny the application four-to-two. Notice of Commission's Decision, ECF 27-3, Ex. 3.

Plaintiff appealed the decision to the Brownsville City Council on August 9, 2017. *See* Application for Appeal to City Council ("Pl.'s Council Appeal"), ECF 27-4, Ex. 4. In her appeal application, Plaintiff alleged that the denial of her application was "based on personal opinions." *Id.* And for her "statement as to how you are affected by this decision," *id.* (capitalization omitted), she wrote: "This decision prevents us from operating an [Oregon Liquor and Cannabis Commission ("OLCC")]) state and local approved [sic] facility and therefore is causing us to loose [sic] business on a daily basis." *Id.*

The City Council heard Plaintiff's appeal on September 19, 2017. McDowell Decl., ECF 27 ¶ 12; Notice of City Council's Decision ("Sept. 26 Notice"), ECF 27-5, Ex. 5. The Council heard from the public for an hour and then held a closed-door meeting, in which

Defendant McDowell participated. *See* Excerpt from Transcript of Sept. 19 City Council

Meeting, ECF 36-4; Excerpt from McDowell Deposition, ECF 36-1 at 3 (7:8–19). After

deliberation, the Council voted on a motion to overrule the Planning Commission's denial of

Plaintiff's application for a conditional license. McDowell Decl., ECF 27 ¶ 12. The motion failed

by a vote of four-to-three. *Id.*

A week later, on September 26, 2017, the Council voted again on Plaintiff's application

because, under the City's laws, the City Council had to take "final action" to either approve or

deny Plaintiff's application. *Id.* ¶ 13. The Council denied Plaintiff's application by a vote of four-

to-two. *Id.*; Sept. 26 Notice, ECF 27-5, Ex. 5. The Council then issued a Notice of Decision to

Plaintiff with an attached Findings of Fact. Findings of Fact for Sept. 26 Notice, ECF 36-3. In its

Findings, the Council explained that it approved the Planning Commission's denial because it

agreed with the Commission's finding that "adverse conditions outweighed the proposed use."

*Id.* Those "adverse conditions," the Council wrote, comprised of "the potential impact on the

surrounding area and uses in relation to the increased potential risk that children and youth could

be negatively impacted by a recreational drug facility in the community." *Id.*

On October 13, 2017, Plaintiff gave notice to Defendant the City of Brownsville that it

intended to appeal the Council's decision to the Land Use Board of Appeals of the State of

Oregon ("LUBA").[1] Notice of LUBA Appeal, ECF 36-5 at 1. Eleven days after, the City Council

voted to withdraw its earlier decision on Plaintiff's application and set a hearing to reconsider

Plaintiff's appeal from the Planning Commission's denial. McDowell Decl., ECF 27 ¶ 15. It did

so "[o]n the advice and direction of City Attorney Ross Williamson and Planning Consultant

---

[1] Defendant McDowell's declaration mistakenly states that the Notice was filed on
October 18, even though the Notice itself states it was filed on October 13.

David Kinney," Nov. 14, 2017 City Administrator Report, ECF 36-7 at 1, though as Plaintiff

notes, no specific reasons for the withdrawal appear in the evidence presented by the parties, *see*

Pl.'s Resp. ECF 35 at 2.

On November 14, 2017, the City Council held its meeting to reconsider Plaintiff's appeal.

McDowell Decl., ECF 27 ¶ 16. As part of the meeting's agenda, Defendant McDowell included

a report explaining "the City Council's position regarding the State of Oregon's actions in

legalizing marijuana," *id*; *see* Special Meeting Agenda, ECF 36-7 at 3. It states in full:

> The City has spent a lot of time and money reviewing all possible
> options through legal opinions and advice received from multiple
> attorneys and the League of Oregon Cities regarding marijuana
> uses. The City's major concern is the current landscape in the
> State. The City has been preempted, prohibited, by the State of
> Oregon to properly address concerns regarding the legalization of
> marijuana. The marijuana effort being carried out by the State of
> Oregon does not allow the City's issues to be heard and rationally
> considered. The State Legislative Assembly's complete, collective
> willful neglect to uphold the Oregon State Constitution, Federal
> law and their civic duty continues unchecked due mostly to the
> amount of financial resources being poured into the marijuana
> legalization effort.
>
> The State legalizing an illegal operation continues to fall on deaf
> ears. The State has not legalized marijuana technically, [sic] they
> have decided to shield every business, business interest or
> individual interest related to the marijuana industry, including
> homegrown users, by granting immunity from prosecution
> claiming that [neither] the State, nor its municipalities or counties
> are responsible for carrying out or enforcing Federal law. Anyone
> associated with marijuana is still subject to Federal prosecution.
> The City is not authorizing or condoning illegal behavior or
> activity and the City's permission does not grant or imply any
> protections by the City, the City's staff or personnel. City
> regulations are intended to impose restrictions, mitigation efforts,
> not to provide authorizations.
>
> Council must weigh potential legal claims and related expenses
> against the probability of defending the City's legal case. The past
> State legislative sessions and actions and current legal events have
> led to confusion which have resulted in no justice or peace for
> Oregonians being impacted by marijuana activities.

Special Meeting Agenda, ECF 36-7 at 3. At the hearing, the City Council voted unanimously to

approve Plaintiff's application and adopted the Findings of Fact and Conditions of Approval

issued by the City's staff on July 17, 2017. Nov. 16 Notice of Decision, ECF 36-8. Plaintiff

received her Notice of Decision on November 16, 2017. Thereafter, Plaintiff began the process

to receive an OLCC license for selling recreational marijuana, which she did on June 27, 2018.

Ashford Recreational Marijuana License Application, ECF 28-3, Ex. 8 at 1.

A year later, on July 31, 2019, Plaintiff filed suit under 42 U.S.C. § 1983 in the Oregon

Circuit Court for Linn County, along with  Green Cross Dispensary, LLC, and Randy Simpson.

*See* First Complaint, ECF 1-1. As Defendants, she named the City of Brownsville, City

Administrator McDowell, and the City Planning Commissioners and the City Councilors who

had voted against her application. *Id.* at 1–2. After Plaintiff amended her Complaint twice in the

Circuit Court, Defendants removed the case to the U.S. District Court for the District of Oregon

on September 24, 2019. Notice of Removal, ECF 1.

Plaintiff seeks damages for the period between May 2017 and June 2018, during which

she did not have a license to sell recreational marijuana. Second Amended Complaint ("SAC"),

ECF 1-2 ¶¶ 12–15. She makes three claims under the Federal Constitution. (However, her

Complaint mislabels her third claim as her fourth even though there is no "third" claim listed, *see*

*id.* at 9). First, she argues that Defendant McDowell "unlawfully denied Plaintiff[] [her] right to

the license necessary to practice [her] trade, and engage in the type of speech and assembly

necessarily included in the practices of that trade," *id.* ¶ 17. Second, she argues Defendant

McDowell "singl[ed] [her] out . . . as a class of one" and "intentionally treated [her] differently

from others similarly situated" without any "rational basis for the different [sic] in treatment."

*Id.* ¶ 24. Finally, citing *Monell v. Department of Social Services of the City of New York*,

436 U.S. 658 (1978), she argues that Defendant City of Brownsville is "directly liable to plaintiff[] for its unconstitutional policies, customs, or practices . . . for failing to properly train its decision markers, elected and hired." *Id.* ¶ 33. Defendant McDowell raises the defense of qualified immunity. Corrected Answer, ECF 5 ¶ 18.

Following discovery—which was completed on February 10, 2022—the Parties agreed that Plaintiff Gayle Ashford is the only proper plaintiff in this suit and that the only remaining Defendants are the City of Brownsville and City Administrator McDowell. Defs.' Motion for Summary Judgment ("Defs.' Mot."), ECF 26 at 1; Pl.'s Resp., ECF 35 at 1.[2] Defendants filed a Motion for Summary Judgment, ECF 26, on May 13, 2022, and briefing was completed on September 13, 2022.

On June 6, 2023, this case was reassigned to this Court. The Court now grants summary judgment to Defendants on all three of Plaintiff's claims.

## STANDARDS

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

"[A] moving party without the ultimate burden of persuasion at trial . . . may carry its initial burden of production by either of two methods. The moving party may produce evidence

---

[2] Both parties confirmed this at oral argument.

negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Then, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Clicks Billiards*, 251 F.3d at 1257. The non-moving party must "set forth specific facts in support of [its] . . . theory." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (citation omitted). "Where the record taken as a whole could not lead to a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 687 (1986) (internal quotation marks and citation omitted).

## DISCUSSION

This Court will first evaluate whether Plaintiff has presented any genuine disputes of material fact for her First and Fourteenth Amendment claims against Defendants McDowell and the City of Brownsville. Then the Court will consider whether Plaintiff has met her burden to defeat Defendant McDowell's qualified immunity defense.[3]

### A.  Plaintiff Has Not Met Her Burden of Producing Evidence of a Constitutional Violation

For her § 1983 claims against both Defendants, Plaintiff bears the burden of presenting a genuine dispute of material fact as to whether Defendants violated her constitutional rights. *See Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021) ("[P]laintiff [must] raise[] a genuine issue of fact showing . . . a violation of a constitutional right" (quotation marks omitted)); *Lockett v.*

---

[3] Municipalities cannot invoke qualified immunity. *Owen v. City of Independence*, 445 U.S. 662 (1980).

*County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims . . . require a plaintiff to show an underlying constitutional violation."). As explained below, the Court holds that Plaintiff has not met her burden of raising a genuine issue of material fact as to whether Defendants violated her First Amendment right of freedom of speech or her Fourteenth Amendment right to class-of-one equal protection.

### 1. Plaintiff's First Amendment Claim

Plaintiff alleges that Defendants deprived her of her "right to the license necessary to practice her trade . . . and engage in the type of speech and assembly necessarily included in the practices of that trade." SAC, ECF 1-2 at 6. Plaintiff asserts that Defendants did so by effectively denying a marijuana dispensary license to her, *id.*, at 5, for no reason other than their "outward dislike for marijuana," *id.*, at 1. She argues that the First Amendment must "apply to all state license applications, regardless of federal prohibition." Pl.'s Resp., ECF 35 at 5.

Defendants counter that Plaintiff cannot meet its "burden to show that a marijuana dispensary is a First Amendment-protected business." Defendant's Reply ("Defs.' Reply"), ECF 40 at 4. Invoking the Supremacy Clause of the United States Constitution, art. VI, cl. 2, Defendants primarily assert that "while the State of Oregon may decriminalize marijuana sales and possession, marijuana remains unlawful to possess and sell." *Id.* at 12. In Defendants' view, Plaintiff lacks any First Amendment right to conduct what they call "illegal drug trafficking under federal law." *Id.*

The Court holds that Plaintiff cannot carry its ultimate burden of proving a First Amendment violation at trial under "current law." *See Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022). The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech," U.S Const., amend. I, and is incorporated against the states under the Fourteenth Amendment, *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425

U.S. 748, 479 n.1 (1976). In First Amendment freedom of speech cases, the "threshold question" is "whether conduct with a 'significant expressive element' drew the legal remedy," *HomeAway.com, Inc v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019) (quoting *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015)). *See Monarch Content Mgmt. LLC v. Ariz. Dep't of Gaming*, 971 F.3d 1021, 1029 (9th Cir. 2020) ("Our inquiry begins, and ultimately ends, with whether [the challenged law] regulates speech."). This is because "[r]estrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct." *Int'l Franchise Ass'n*, 803 F.3d at 408 (original brackets omitted) (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011)). "The First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Id.* (quoting *Sorrell*, 564 U.S. at 567).

Two Ninth Circuit opinions illustrate the line between expressive conduct and economic activity. In *HomeAway.com*, two "home-sharing" platforms argued that a Santa Monica ordinance prohibiting unlicensed short-term rentals violated their First Amendment right because "the law effectively impose[d] a 'content-based financial burden' on commercial speech." 918 F.3d at 684. The Ninth Circuit rejected this contention, explaining that "the conduct at issue— completing booking transactions for unlawful rentals—consist[ed] only of nonspeech, nonexpressive conduct." *Id.* at 685. Likewise, in *International Franchise Association*, the International Franchise Association challenged a Seattle ordinance that increased the City's minimum wage and "classifie[d] certain franchisees as large employers, subjecting them as a result to a steeper schedule of incremental wage increases over the next five years." 803 F.3d at 397. The Ninth Circuit held that Seattle's law did not regulate any speech, for "[t]he conduct at issue—the decision of a franchisor and a franchisee to form a business relationship and their

resulting business activities—'exhibit[ed] nothing that even the most vivid imagination might deem uniquely expressive.'" *Id.* at 389 (quoting *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 53 (1st Cir. 2005)).

At this "threshold" step, Plaintiff cannot present a genuine dispute of fact over whether she was seeking a license to engage in expressive conduct. From the undisputed evidence, there is no question that Plaintiff sought a license to engage in commerce at the time of her initial license denials and that any resulting expression was incidental to that commercial activity. She sought a permit for, in her words, "Conditional Use allowing a Recreational Marijuana Facility, with Limited Medical Marijuana sales in the Light Industrial Zone." Notice of LUBA Appeal, ECF 36-5 at 1; *see also* Pl.'s App, ECF 27-1, Ex. 1; Pl.'s Council Appeal, ECF 27-4, Ex. 4 (Plaintiff asserting that her facility has met all "requirements for the operation of a recreational marijuana . . . facility."). As the evidence shows, Plaintiff protested the denial of a license because, as she put it, the denial "prevents us from operating an . . . approved facility and therefore is causing us to loose [sic] business on a daily basis." Pl.'s Council Appeal, ECF 27-4, Ex. 4; *see* Defs.' Mot., ECF 26 at 4. These activities are much like the business transactions— renting a dwelling or forming business relationships—that *HomeShare.com* and *International Franchise Association* determined to be unprotected commercial activity. Nothing in the record contradicts Plaintiff's own statements or suggests that there was a significant expressive component to Plaintiff's operating her facility. Indeed, it is unclear how Plaintiff's lack of a recreational license impaired her ability to express herself, particularly when she was already

selling medical marijuana.[4] *See* Pl.'s App., ECF 27-1 (showing that Plaintiff's existing location was selling medical marijuana).

That some speech is "necessarily" involved in commercial activity—or as Plaintiff put it, that one must "be able to speak freely about her business while conducting her business," Pl.'s Resp., ECF 35 at 13—does not alter the analysis. As the Ninth Circuit acknowledged in *International Franchise Association*, a restriction on business dealings "is not wholly unrelated to a communicative component, but that in itself does not trigger First Amendment scrutiny." 803 F.3d at 408 (citing *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 708 (1986)); *see Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017) (explaining that when a "law's effect on speech would only be incidental to its primary effect on conduct," it does not trigger First Amendment scrutiny). *HomeAway.com* is instructive. There, the home-sharing platforms asserted that regulation of commercial conduct could still "chill[] commercial speech, namely, advertisements." 918 F.3d at 686. The Ninth Circuit, however, found this unavailing and held that the platforms' conduct did "not implicate speech protected by the First Amendment." *Id.* (citing *Int'l Franchise Ass'n*, 803 F.3d at 408). Here, the undisputed evidence undermines any inference that Plaintiff sought to engage in expression other than the kind that *HomeAway.com* found to be unprotected by the First Amendment.

---

[4] While a court must view the evidence in the light most favorable to the non-movant, a court "need not draw *all* possible inferences in the [non-movant's] favor, but only all *reasonable* ones." *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 n.10 (9th Cir. 2002) (citing *O.S.C. Corp. v. Apple Comput., Inc.*, 792 F.2d 1464, 1466–67 (9th Cir. 1986)). The Court will not draw the inference for Plaintiff that a recreational marijuana license permits more expression than a medical marijuana license when nothing in the record supports that inference and her own statements show that the key difference between the two licenses was her access to paying customers. *See supra* at 13–14.

Plaintiff offers three cases for her First Amendment theory, but only for the proposition that the First Amendment "appl[ies] to all state license applications, regardless of federal prohibition," ECF 35 at 5. By so doing, Plaintiff has failed to address the antecedent "threshold" question whether commercial activity, illegal or not, is protected by the First Amendment at all. Furthermore, the cases Plaintiff cites do not contradict the Ninth Circuit precedent discussed above and do not show that the First Amendment must apply to marijuana retailer permits. *See* Pl.'s Resp., ECF 35 at 5. All three cases—an unpublished opinion from the Northern District of Illinois and two opinions from the Ninth Circuit—involve whether fulfilling the criteria for a state licensing scheme creates a property interest for a Fourteenth Amendment procedural due process claim. *See Brothella Quick v. Ill. Dep't of Fin. & Prof. Reg.*, No. 1:19-cv-7797 (N.D. Ill. June 23, 2020) (ECF 30 at 10); *Groten v. California*, 251 F.3d 844, 850 (9th Cir. 2001); *Foss v. Nat'l Marine Fish. Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). None concerns the First Amendment, and in any event, Plaintiff has disavowed any reliance on procedural due process. *See* Plaintiff's Sur-Reply ("Pl.'s Sur-Reply"), ECF 44 at 3–4 (arguing that a case cited by Defendants was inapplicable because it discussed "a right to process" rather than "marijuana or federal prohibition" (emphasis omitted)); *see generally* SAC, ECF 1-2 (Complaint not containing any procedural due process claims).[5]

In sum, Plaintiff cannot show a genuine dispute of material fact over whether she was seeking a license to engage in protected speech. She therefore cannot meet the threshold element required to succeed on a First Amendment freedom of speech claim. Defendants are entitled to

---

[5] Consequently, Defendants' arguments on property rights in marijuana licenses have no bearing on the Court's analysis. *See* Defs.' Reply, ECF 40 at 2–3.

summary judgment on Plaintiff's First Amendment claim.[6] *See Celotex*, 477 U.S. at 322 (holding

that a movant's summary judgment motion should be granted "against a [nonmovant] who fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial").

### 2. Plaintiff's Equal Protection Class-of-One Claim

Plaintiff next argues that Defendants discriminated against her as the owner of a

marijuana business, in violation of the Fourteenth Amendment's Equal Protection Clause.

Pl.'s Resp., ECF 35 at 4; SAC, ECF 1-2 ¶¶ 23–30. She acknowledges that "here, state action

d[id] not implicate a fundamental right or suspect classification," ECF 1-2 ¶ 24, and that she is

pressing "a 'class of one' equal protection claim," *id.*; *see id.* at 7 (heading for Second Claim for

Relief). In that vein, Plaintiff alleges that Defendants "intentionally treated [her] differently from

others similarly situated and that there [was] no rational basis for the difference in treatment."

*Id.* ¶ 24. At oral argument, Plaintiff affirmed that she was alleging only an equal protection class-

of-one claim. *See* ECF 52.

Defendants contend that they are entitled to summary judgment on Plaintiff's Equal

Protection Clause claim because she "cannot demonstrate that [she] w[as] 'similarly situated' as

other conditional use permit applicants." Defs.' Mot., ECF 26 at 17. The burden on Plaintiff,

Defendants claim, is to prove that she "was treated in a disparate fashion when compared to

other applicants seeking to establish a recreational marijuana dispensary." *Id.* at 18. Because she

cannot meet this evidentiary burden, Defendant argues, Plaintiff's claim must fail.[7]

---

[6] Because the Court holds that Plaintiff has no First Amendment right to receive a license
to engage in a trade, the Court need not delve into the relationship between the First Amendment,
the Supremacy Clause, and the tension between State and federal marijuana regulation.

[7] In addition, Defendants in their Reply argue that Plaintiff has conceded her Equal
Protection Clause claim because her Response to Defendants' Motion for Summary Judgment

The Court agrees with Defendants that no reasonable trier of fact could find that Plaintiff has sufficient evidence to prove her equal protection class-of-one arguments. "The Supreme Court has recognized that 'an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Gerhart v. Lake County*, 637 F.3d 1013, 1021 (9th Cir. 2011) (quoting *Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). A plaintiff making a "class-of-one" claim must "demonstrate that the [defendants]: (1) intentionally (2) treated [plaintiff] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart*, 637 F.3d at 1022 (citations omitted).

To satisfy the second prong, "a class-of-one plaintiff must be similarly situated to the proposed comparator in *all material respects*." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022) (emphasis added) ("join[ing] . . . sister circuits" in adopting this test and specifically quoting the Second Circuit's explanation that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006))).

Plaintiff has presented no evidence sufficient to fulfill this element, despite that Defendants identified this lack of evidence in their Motion for Summary Judgment. Defs.' Mot., ECF 26 at 17–18. *See Nissan Fire*, 210 F.3d at 1106. A recent, unpublished Ninth Circuit case also involving marijuana licensing provides persuasive guidance on what Plaintiff must prove for her class-of-one claim. *See Borges v. County of Mendocino*, No. 22-15673, 2023 WL 2363692 (9th Cir. Mar. 6, 2023), *cert. pet. docketed*, 22-15673 (U.S. July 14, 2023). In *Borges*, the

---

"offer[ed] no rebuttal" to Defendants' legal arguments. Defs.' Reply, ECF 40 at 6. The Court need not decide whether Plaintiff conceded this argument because it holds that Plaintiff has not met her burden in responding to Defendants' Motion.

plaintiffs appealed "the district court's order granting summary judgment to the County [of Mendocino] on their equal protection class-of-one claims that the County unfairly singled them out in denying [a] cannabis cultivation permit." *Id.* at *1. The Ninth Circuit affirmed summary judgment, explaining that plaintiffs had failed to present evidence of other applicants who, like them, sought the same license despite not meeting the relevant criteria, yet, unlike them, received permits. *Id.* at *2 ("Plaintiffs have not identified an applicant who was granted a Phase One permit *and* w[as] not cultivating at an origin site *on* January 1, 2016." (first emphasis added)). Akin to plaintiff in *Borges*, Plaintiff must show evidence of other individuals who, like Plaintiff, met the conditions for a conditional use permit for running recreational marijuana businesses, *see* City Staff Report, ECF 27-2, Ex. 2 at 6–10, but, unlike Plaintiff, did receive the permit.

Plaintiff cannot satisfy this test. To paraphrase *Borges*, she has "failed to present evidence of 'similarly situated'" marijuana dispensaries "who were being treated differently" by the City's Planning Commission and Council under Ordinance No. 751, and thus has "fail[ed] to establish a triable issue of fact on [her] equal protection claims for the denial of a . . . permit." *Id.* To be sure, on summary judgment, "all evidence must be viewed in the light most favorable to the non-moving party." *Giebel v. Sylvester*, 244 F.3d 1182, 1185 n.1 (9th Cir. 2001). But the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to create a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, the post-discovery record lacks any mention, much less a scintilla, of other applicants under Brownsville Ordinance No. 751.[8]

---

[8] Plaintiff asserted for the first time at oral argument that her comparators are other dispensaries located outside the City of Brownsville. Under class-of-one doctrine, these dispensaries are not materially similar to Plaintiff's, given that they are not subject to the same conditional land use licensing laws as Plaintiff's dispensary and are not within the City of Brownsville's jurisdiction. Plaintiff also alleged for the first time at oral argument that there are

In sum, because Plaintiff has failed to establish a genuine issue of material fact over the existence of similarly situated parties, the Court grants summary judgment to Defendants on Plaintiff's equal protection class-of-one claims.

**B.  Defendant McDowell's Qualified Immunity Defense Bars Plaintiff's Claims**

Although the Court concludes that Plaintiff has failed to present a genuine dispute of material fact as to her constitutional claims, the Court considers Defendant McDowell's qualified immunity defense and holds that it bars Plaintiff's claims. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

"The doctrine of qualified immunity protects government officials from liability for civil damages . . . ." *Wood v. Moss*, 572 U.S. 744, 757 (2014). To defeat qualified immunity, "[t]he plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). "A governmental official 'violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Evans*, 997 F.3d at 1066 (brackets omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the

---

no other marijuana dispensaries in the City of Brownsville. This assertion does not advance Plaintiff's class-of-one claim and, in fact, undermines it. Nevertheless, the Court will not treat Plaintiff's argument as evidence. *See Carillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003) (explaining that arguments are not evidence).

backdrop of the law at the time of the conduct." *Id.* (quoting *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Plaintiff here has not presented sufficient case law to meet her burden for her First Amendment or Fourteenth Amendment claims. Accordingly, qualified immunity bars her claims against Defendant McDowell.

### 1. Plaintiff's First Amendment Claim

In neither her Response nor her Sur-Reply to Defendants' Motion for Summary Judgment does Plaintiff cite any cases discussing a First Amendment right to engage in marijuana transactions. *See* Pl.'s Resp., ECF 35; Pl.'s Sur-Reply, ECF 44; *see also Klecka v. Cox*, 696 F. App'x 311 (9th Cir. 2017) (mem.) (holding that when Plaintiff cites no relevant case law, qualified immunity will be granted).[9] Nor has the Court found any such cases. Instead, Plaintiff cites a case that denied qualified immunity to an assistant police chief for retaliating against a public employee who provided subpoenaed deposition testimony. *See* Pl.'s Resp., ECF 35 at 7 (citing *Karl v. City of Mountain Terrace*, 678 F.3d 1062 (9th Cir. 2012)). This case, however, concerned the First Amendment doctrine of determining whether a public employee has engaged

---

[9] In their Reply for their Motion for Summary Judgment, Defendants extensively discuss *Butler v. Douglas County*, Civil No. 07-6241-HO, 2010 WL 3220199 (D. Or. Aug. 10, 2010), for the proposition that Defendant McDowell is shielded by qualified immunity. In *Butler*, plaintiffs, citing state law, sought the return of marijuana seized during a Douglas County-led law enforcement search of a marijuana farm. *Id.* at *1. Soon after, Douglas County and its Sheriff referred the case to federal law enforcement—which put the seized marijuana into federal custody and thus beyond the reach of plaintiffs. *Id.* at *1–2. Plaintiffs sued Douglas County and the Sheriff under a First Amendment retaliation theory. *Id.* The court held that the Sheriff was entitled to qualified immunity. It reasoned that "[s]eeking to prevent violation of a federal law that preempts a state law by opposing a right granted by that state law . . . cannot be considered a violation of a clearly established constitutional right." *Id.* at *4. Because the Court holds that Plaintiff does not meet her burden under qualified immunity as a threshold matter, it need not consider *Butler*'s applicability to the circumstances here, which involve a different First Amendment theory.

in protected personal speech or unprotected speech on behalf of the government. *Karl*, 678 F.3d at 1068. It does not evidence clearly established law for Plaintiff's own First Amendment claim.

### 2. Plaintiff's Equal Protection Class-of-One Claim

Plaintiff offers a single case for the proposition that Defendant McDowell violated a clearly established Fourteenth Amendment right. Pl.'s Resp., ECF 35 at 6–7 (citing *Elliott-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2010)). In *Elliott-Park*, plaintiff, an ethnic Korean, claimed that after a drunk Micronesian man crashed into her car, the police officers at the scene "failed to investigate the crime or arrest [the alleged drunk driver] because of racial animus against her as a Korean and in favor of [the driver] as a Micronesian." 592 F.3d at 1006. She filed a § 1983 claim, and the officers asserted that they had not violated a clearly established right. *Id.* The Ninth Circuit rejected this argument, explaining that "in equal protection cases . . . the non-discrimination principle is so clear." *Id.* at 1008. "The constitutional right to be free from such invidious discrimination," the court concluded, "is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it." *Id.* at 1008–09 (quoting *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir. 1980)).

Despite this broad pronouncement, *Elliot-Park* does not clearly establish law that could defeat qualified immunity in this case. "[C]learly established law must be 'particularized' to the facts of the case." *Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1199 (9th Cir. 2021) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "[T]he crucial question," the Ninth Circuit has instructed, is "whether the official acted reasonably in the particular circumstances that he or she faced." *Sampson v. Cnty. of Los Angeles ex rel. Los Angeles Cnty. Dep't of Children & Family Servs.*, 974 F.3d 1012, 1024 (9th Cir. 2020) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). Here, Plaintiff argues that Defendant McDowell violated the Equal Protection Clause "by advising [the Planning Commission and the City Council] about the underlying legality of

their" vote to approve or deny Plaintiff's recreational marijuana license. Pl.'s Resp., ECF 35 at 7. But Plaintiff does not cite, nor has the Court found, any controlling authority holding that, by so advising, a government employee has committed a class-of-one violation.

Thus, no reasonable government employee in a similar situation to Defendant McDowell would have had notice that he was violating an individual's equal protection right. Plaintiff cannot show that Defendant McDowell violated a clearly established constitutional right.[10]

## CONCLUSION

This Court concludes that Plaintiff cannot show a genuine dispute of material fact regarding whether Defendants violated her First and Fourteenth Amendment rights. And in the alternative, for Defendant McDowell, Plaintiff has not presented the clearly established law required to prove that, in the summer of 2017, a reasonable government official in Defendant McDowell's position would have been on notice that he was violating the Constitution.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

DATED this 22nd day of September, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[10] The Parties dispute whether Defendant McDowell's involvement in the denial of Plaintiff's license was sufficient for him to be held liable. *Compare* Pl.'s Resp., ECF 35 at 7–12 *with* Defs.' Mot., ECF 26 at 13–14; ECF 40 at 6–7. The Court will not opine on this issue, given that Plaintiff has not met her evidentiary and legal burdens on predicate elements of her claims.

PAGE 22 – OPINION AND ORDER